THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
GEORGE WESLEY, Appellant.

Third Department, October 22, 1992

*See, People v Wesley,* 140 Misc 2d 306.

## APPEARANCES OF COUNSEL

*Roger M. Fritts (Jeanne M. Heran* of counsel), Albany, for appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), Albany, for respondents.

### OPINION OF THE COURT

MAHONEY, J.

These appeals present the issue, one of first impression in the appellate courts of this State, of whether and under what circumstances the results of forensic DNA testing using the RFLP technique,[1] colloquially referred to as DNA fingerprinting, is admissible in a criminal trial. The underlying facts are easily stated. On September 15, 1987, 79-year-old Helen Kendrick was found dead in her Madison Avenue apartment in the City of Albany. An autopsy revealed that she had been sexually assaulted and sodomized; the cause of death was attributed to manual strangulation. Police investigation centered upon defendant when caseworkers from the Albany City Hostel, an organization serving developmentally disabled adults of which defendant and the victim were clients, discovered a bloodstained T-shirt with gray and white hairs on it, bloodstained underwear and sweatpants in defendant's apartment. During questioning, defendant admitted visiting the victim on September 13, 1987. He admitted "tripping" her but denied sexually assaulting or murdering her.

In connection with the investigation, samples of the victim's hair and defendant's bloodstained clothing were delivered to Lifecodes Laboratory (hereinafter Lifecodes) for forensic DNA

---

1. RFLP refers to "restriction fragment length polymorphism" and denotes a six-step procedure whereby DNA is isolated from a source, and a bar code type "fingerprint" of certain base sequences of the DNA is created. The nature of DNA and the particulars of RFLP testing are explained in detail in *People v Wesley* (140 Misc 2d 306) and are not reiterated herein.

testing. Testing revealed that the DNA isolated from the victim's hair samples matched with the DNA isolated from the blood on the clothing, thus directly connecting defendant to the commission of the crime. Despite the foregoing, the prosecution nonetheless then moved in County Court to compel defendant to submit to a blood test for DNA analysis (ostensibly to definitively rule out any possibility that the blood on the clothing could be his). Apparently of the view that resolution of the prosecution's motion required the court, as a threshold matter, to determine the admissibility of this evidence at trial, a hearing pursuant to *Frye v United States* (293 F 1013) and *People v Middleton* (54 NY2d 42) was conducted to determine the scientific reliability of forensic DNA fingerprint evidence in establishing the identity of a suspected criminal.

At the conclusion of the lengthy hearing, County Court found that forensic DNA fingerprint evidence satisfied the standards for admissibility set forth in *Frye v United States (supra)* and *People v Middleton (supra)* and granted the prosecution's motion (140 Misc 2d 306). Not surprisingly, DNA analysis of defendant's blood confirmed that defendant's DNA did not match with the DNA isolated from the bloodstained clothing. The DNA evidence was admitted at trial. While defendant was acquitted of one of the charged counts of murder in the second degree and the sodomy charge, he was convicted of four counts of murder in the second degree, rape in the first degree, attempted sodomy in the first degree and burglary in the second degree. From the judgment entered on the jury verdict and by permission from the order denying his postverdict motion to set aside the conviction, defendant appeals.

■ The gravamen of defendant's arguments on appeal is that the evidence submitted at the hearing regarding forensic DNA fingerprinting did not satisfy the threshold of reliability necessary to permit its admission at trial. We disagree. By way of explanation, we begin with the proposition that the admissibility of DNA fingerprint evidence, like any other novel scientific evidence, requires a threshold showing that the scientific theory and the procedures used to obtain the result have gained general acceptance in the scientific community and the result achieved is accepted by that community as reliable *(Frye v United States, supra; People v Hughes,* 59 NY2d 523; *People v Middleton, supra).* Under this test, ancillary issues regarding integrity of the particular forensic sam-

ple from which the DNA fingerprint was obtained and whether the laboratory followed the accepted procedures in carrying out the tests on the particular sample at issue speak to the weight the evidence is accorded and thus are not relevant to the initial determination of admissibility *(see, e.g., People v Mohit,* 153 Misc 2d 22; *cf., People v Shi Fu Huang,* 145 Misc 2d 513).[2]

A review of the hearing transcript, the particulars of which are described extensively in County Court's opinion (140 Misc 2d 306, *supra)* and are not reiterated here, clearly demonstrates that the prosecution has satisfied its burden of proof of the general acceptance and reliability of this type of evidence. As reflected in the transcript, the theory underlying forensic DNA fingerprinting has gained acceptance in the scientific community. Indeed, as defendant concedes here, this conclusion is no longer subject to much dispute *(see, United States v Jakobetz,* 955 F2d 786, *cert denied* — US —, *supra* [Oct. 5, 1992]; *People v Lipscomb,* 215 Ill App 3d 413, 574 NE2d 1345, *appeal denied* 141 Ill 2d 553, 580 NE2d 127; *Commonwealth v Rodgers,* 413 Pa Super 498, 605 A2d 1228; *Andrews v State,* 533 So 2d 841 [Fla]; *Cobey v State,* 80 Md App 31, 559 A2d 391, *cert denied* 317 Md 542, 565 A2d 670; *State v Pennington,* 327

---

2. We are aware that several tribunals which follow the *Frye (supra)* standard for admissibility of novel scientific evidence (including two New York nisi prius courts) have declined to adopt it in the context of DNA fingerprint evidence, claiming that the relative novelty of the theory and the complexity of the testing procedures require a more stringent test which includes, in addition to satisfying the *Frye* test, a showing that accepted procedures actually were followed in testing the *subject samples,* thus rendering the results reliable *(see, People v Castro,* 144 Misc 2d 956; *People v Lopez,* NYLJ, Jan. 6, 1989, at 29, col 1; *see also, United States v Two Bulls,* 918 F2d 56; *Perry v State,* 586 So 2d 242 [Ala]; *see generally,* Goldberg, *A New Day for DNA?,* 78 ABAJ, Apr. 1992, at 84-85; Imwinkelried, *The Debate in the DNA Cases Over the Foundation for the Admission of Scientific Evidence: The Importance of Human Error as a Cause of Forensic Misanalysis,* 69 Wash U LQ 19 [1991]; Thompson and Ford, *DNA Typing: Acceptance and Weight of the New Genetic Identification Tests,* 75 Va L Rev 45 [1989]). While cognizant of the fact that the *Frye* test recently has been called into question as an across-the-board standard for judging the admissibility of *all* types of scientific evidence *(see, People v Mooney,* 76 NY2d 827, 829, n 1 [Kaye, J., dissenting]), in this instance we are not persuaded that the peculiarities attendant to DNA testing render the *Frye* test inadequate *(see, People v Mohit,* 153 Misc 2d 22, *supra; People v Wesley,* 140 Misc 2d 306, *supra; see, United States v Jakobetz,* 955 F2d 786, *cert denied* — US — [Oct. 5, 1992]; *United States v Yee,* 129 FRD 629 [Ohio]; *Cobey v State,* 80 Md App 31, 559 A2d 391, *cert denied* 317 Md 542, 565 A2d 670; *Commonwealth v Lanigan,* 413 Mass 154, 596 NE2d 311; *Commonwealth v Rodgers,* 413 Pa Super 498, 605 A2d 1228, *supra; State v Schwartz,* 447 NW2d 422 [Minn]).

NC 89, 393 SE2d 847; *Kelly v State,* 792 SW2d 579, *affd* 824 SW2d 568 [Tx]; *Spencer v Commonwealth,* 238 Va 275, 384 SE2d 775, *cert denied* 493 US 1036; *State v Woodall,* 182 W Va 15, 385 SE2d 253; *see also, People v Castro,* 144 Misc 2d 956; *cf., People v Crosby,* 116 AD2d 731, *lv denied* 67 NY2d 941).

Likewise, we believe the evidence sufficiently established that the six-step RFLP technique used to isolate the DNA from a source and to obtain a "fingerprint" therefrom is reliable.[3] At the *Frye* hearing, numerous scientists who are at the forefront of genetic and DNA testing presented expert testimony that the results of forensic DNA testing are reproducible, the protocols used are reliable and are the same or modifications of those used for decades in other areas of DNA identification. It was further established that these accepted protocols are used by Lifecodes, and quality controls are in place at that laboratory to insure reliability of each step of the testing process. While RFLP testing in the forensic arena presents unique problems not encountered in other areas because the samples from which the DNA is extracted often are contaminated or are exposed to environmental influences, expert testimony also established that these factors do not degrade the quality of the DNA or compromise the fingerprint. Significantly, it was unrefuted that it is *impossible* under the RFLP procedure to obtain a false positive result, i.e., to identify the wrong individual as the contributor of the DNA being tested; if there is insufficient DNA for the test, if it is degraded due to environmental or other factors, or if any of the procedures are performed improperly, *no print at all* will register.

Finally, although one of the more disputed issues at the hearing and the basis for most objections to the admission of DNA fingerprint evidence in general *(see, State v Schwartz,* 447 NW2d 422 [Minn]; *see generally,* Duceman, *DNA Analysis: Scientific and Legal Aspects,* 2 Albany L J of Sci & Tech 53 [1992]; Comm on DNA Tech in Forensic Sci, Natl Research Council Staff, *DNA Technology in Forensic Science,* Apr. 1992),

---

3. Our conclusion in this regard is consistent with the holdings of other courts which have had occasion to address this issue *(see, Commonwealth v Rodgers, supra; Commonwealth v Curnin,* 409 Mass 218, 565 NE2d 440; *People v Lipscomb, supra; Andrews v State, supra; see generally,* Duceman, *DNA Analysis: Scientific and Legal Aspects,* 2 Albany L J of Sci & Tech 53 [1992]; Fiatal, *DNA Testing and the Frye Standard,* 59 FBI L Enforcement Bull 26 [June 1990]).

the protocol used by Lifecodes in interpreting the DNA finger-print once it is produced, that is, in determining the existence of a match with other DNA fingerprints and in calculating the probability that the match was coincidental, also was suffi-ciently established to be accepted and reliable. Detailed testi-mony was presented regarding the technology and procedure used by Lifecodes in declaring a DNA match, and blind proficiency test data was introduced confirming its reliability. Regarding probability calculations, because it is impossible to map an entire DNA molecule, certain statistical assumptions derived from the area of population genetics regarding the frequency with which certain base sequences within a DNA strand will occur in a population (e.g., the Hardy-Weinberg principle), as supplemented and confirmed by the results of a two-year study completed by Lifecodes, are employed in order to arrive at an estimate of the probability that the match found could have occurred fortuitously. While certain scien-tists still debate the validity of these assumptions, as well as the stricter criteria used by Lifecodes for determining band frequencies, in our view the expert testimony presented at the hearing satisfied the requisite standard of general acceptance and reliability.

■ We have reviewed defendant's remaining contentions and find them to be without merit. Inasmuch as defendant proffered no "new" evidence to support his April 8, 1990 postconviction motion pursuant to CPL 440.10 (1) (g) to set aside the verdict, the motion was properly denied without a hearing. Finally, defendant has failed to sustain his initial burden of proving that the prosecution used a peremptory challenge to an African-American juror for discriminatory purposes (see, People v Bolling, 79 NY2d 317). In any event, the prosecution came forward with a viable, racially neutral reason for dismissing the juror.

YESAWICH JR., J. P., LEVINE, CREW III and HARVEY, JJ., concur.

Ordered that the judgment and order are affirmed.