■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT GOLUB, Appellant. [601 NYS2d 502] —Appeal by the defendant from a judgment of the County Court, Nassau County (Goodman, J.), rendered June 1, 1990, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence and statements made by him to law enforcement authorities.

Ordered that the judgment is affirmed.

On March 3, 1989, at approximately 2:30 P.M., the 14-year-old victim returned home from school. The victim lived at 101 Horton Road, Valley Stream, Long Island. The Golub family lived five doors away at 81 Horton Road. At 2:50 P.M., the victim received a telephone call which, telephone company records indicate, originated from the Golub residence. Shortly afterwards, the victim left her house. At approximately 3:15 P.M., she was seen entering the Golubs' house. The following day, the victim's mutilated body was found in a storage area underneath the stairs leading to the basement of the Golub home. In addition, two bloodstained attache cases containing the victim's clothing were found in the basement. The bloodstains were tested using a then relatively new scientific technique known as "DNA fingerprinting". The results of the tests indicated that the blood on the attache cases was that of the victim and that of the defendant.

Prior to trial, a *Frye* hearing *(see, Frye v United States,* 293 F 1013) was held to determine the admissibility of the DNA evidence. At the conclusion of the hearing, the court found that DNA fingerprinting is a reliable scientific theory that is generally accepted in the scientific community and that the six-step procedure used to extract and analyze DNA samples is also generally accepted in the scientific community. The hearing court further found that Lifecodes, the laboratory which conducted the DNA testing, had adequately performed the tests in this case and that its findings were sufficiently reliable to be admissible at trial as a question of fact for the jury.

After a lengthy trial, the defendant was found guilty of the murder of the victim. The evidence against him included, *inter alia,* the DNA evidence. On appeal, the defendant challenges the admission of that evidence.

Presently, there is no serious dispute in the legal or scientific community concerning the theory underlying DNA identi-

fication. It has been extensively and thoroughly detailed in New York case law and has been found to be generally accepted in the scientific community *(see, People v Wesley,* 183 AD2d 75, 78, *lv granted* 81 NY2d 978; *People v Mohit,* 153 Misc 2d 22, 25; *People v Shi Fu Huang,* 145 Misc 2d 513, 514; *People v Castro,* 144 Misc 2d 956, 963; *People v Gonzalez,* NYLJ, Aug. 18, 1989, at 22, col 2; *People v Lopez,* NYLJ, Jan. 6, 1989, at 29, col 1).

Likewise, there is no serious dispute with regard to the six-step procedure used to isolate and identify DNA. Dr. Michael Baird, the People's expert, testified at the *Frye* hearing that the six-step procedure has been generally accepted in the scientific community where it has been used for approximately 12 years. Dr. Simon Ford, the defendant's expert, agreed that the procedure used by Lifecodes is based closely on the standard techniques used in molecular biology laboratories for identifying DNA fragments, and defense counsel conceded, at the hearing, that these techniques are scientifically reliable, at least in a clinical setting. Moreover, like the theory underlying DNA identification, the six-step procedure has been thoroughly discussed in New York case law and has been recognized as generally accepted in the scientific community *(see, People v Wesley, supra,* at 79; *People v Shi Fu Huang, supra,* at 515; *People v Castro, supra,* at 963-965; *People v Gonzalez, supra; People v Lopez, supra).*

The defendant's reliance on *People v Castro (supra)* is misplaced. In that case, the accuracy of the results were severely criticized by a number of experts due, in large part, to a purported insufficient sample *(see, People v Gonzalez, supra).* Moreover, a contaminated bacterial probe was used, the DNA in the unknown sample was degraded, and tests to ensure the absence of bacterial DNA in the sample were not performed *(see, People v Castro, supra,* at 974-977). That is not the case here. There is no evidence in the record that the sample sizes were insufficient, the DNA in the samples was tested and found to be both uncontaminated and of high quality, and nonbacterial synthetic probes were used.

Finally, the record reveals that in response to the *Castro* action, Lifecodes had changed its methods of declaring a match and of calculating the frequency of occurrence of the defendant's genetic pattern. Lifecodes no longer declares a match based on visual inspection of the autorads without confirming the match by quantitative measurement of the bands using a computer. Moreover, Lifecodes now uses the same three-standard-deviation rule to calculate the population

frequency that it uses to declare a measured match. Even the defendant's expert, Dr. Mueller, acknowledged at the *Frye* hearing that Lifecodes had "cleaned up [its] act" and "utilized bin sizes which are three standard errors".

The defendant's remaining contentions are either unpreserved for appellate review *(see,* CPL 470.05 [2]) or do not warrant reversal. Mangano, P. J., Thompson, Pizzuto and Joy, JJ., concur.