■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER L. KRAL, Appellant. [603 NYS2d 1004] —Crew III, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered May 29, 1991, upon a verdict convicting defendant of the crime of criminally negligent homicide (two counts) and of the traffic infraction of driving while ability impaired.

On the evening of March 2, 1989 defendant was socializing at his fraternity house in the City of Troy, Rensselaer County, at which time he admittedly consumed a quantity of alcoholic beverages. There was evidence that as a result he appeared intoxicated. At approximately 12:30 A.M. on March 3, 1989, defendant and two companions left the fraternity house in defendant's vehicle and proceeded toward downtown Troy to continue their drinking at one or more of the local bars. A short distance from the fraternity house, defendant's vehicle struck a utility pole resulting in the death of his two passengers. Defendant was arrested at Albany Medical Center Hospital at 2:15 A.M., where he had been taken for treatment, and at 3:29 A.M. a blood sample was taken which revealed a blood alcohol content of .12%.

Defendant was subsequently indicted and charged with two counts of vehicular manslaughter in the second degree (Penal Law § 125.12), two counts of criminally negligent homicide (Penal Law § 125.10) and two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]). Following a jury trial, defendant was convicted of two counts of criminally negligent homicide and, as a lesser included offense of driving

while intoxicated, of driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). Defendant was thereafter sentenced to an indeterminate term of imprisonment of not less than 1⅓ nor more than 4 years on each of the criminally negligent homicide convictions, and to a definite term of 30 days on the driving while ability impaired conviction, together with a $250 fine, all sentences to run concurrently.

On this appeal defendant asserts a number of reasons for reversal. The first is that the People violated the physician-patient privilege by subpoenaing his hospital records. Initially, we note that, as conceded by the People, it was altogether inappropriate for the People to have issued a subpoena duces tecum returnable to their office in advance of trial, and we unequivocally condemn such practice as a misuse of court process (People v Natal, 75 NY2d 379, 384-385, cert denied 498 US 862). However, for the reasons hereinafter stated, we do not perceive that such misconduct warrants reversal.

The People subpoenaed defendant's hospital records in order to obtain the results of blood work done for diagnostic purposes prior to the blood sample taken at 3:29 A.M. for blood alcohol content. The hospital records revealed that a blood sample was taken at 2:07 A.M. to determine defendant's serum osmolarity. The People retained an expert in toxicology who was to testify as to the range of blood alcohol content of defendant at the time of the accident. The People's expert arrived at his opinion by way of backwards linear extrapolation based upon the various element levels present in defendant's serum osmolarity. Defendant objected to such testimony upon the ground that use of such a diagnostic test was violative of the physician-patient privilege (CPLR 4504 [a]), and the expert was prohibited from testifying on the People's direct case.

After the People rested, defendant testified on his own behalf concerning the amount and kind of food and alcohol he had ingested prior to the accident. Defendant then called a pharmacologist to the stand who testified as to the absorption rate of alcohol into the blood and opined that at the time of the accident it was unlikely that any of the alcohol consumed by defendant one hour prior to the accident had been absorbed. The People then sought to have their expert testify in rebuttal claiming, as defendant conceded on oral argument in this Court, that the physician-patient privilege had been waived. County Court permitted the expert to testify.

Initially, inasmuch as defendant ultimately waived the physician-patient privilege, we see no purpose in reversing his

conviction as the result of the People's misuse of the subpoena process. Defendant contends further, however, that the People's expert should not have been permitted to testify because it was not demonstrated that the serum osmolarity test was sufficiently reliable to determine blood alcohol content *(see, Frye v United States,* 293 F 1013; *People v Campbell,* 73 NY2d 481).\* We agree. The People's contention to the contrary notwithstanding, the only plausible explanation for their offer of the expert's testimony was to demonstrate that defendant's blood alcohol content exceeded the statutorily proscribed amount at the time of the accident, and the sharply contrasting testimony of the expert for the People and that of defendant hardly established that the scientific theory and the procedure used to obtain the results derived by the People's expert have gained general acceptance in the scientific community *(see, People v Wesley,* 183 AD2d 75, 77, *lv granted* 81 NY2d 978). However, any error in that regard was harmless *(see, People v Crimmins,* 36 NY2d 230). Implicit in the jury's verdict acquitting defendant of vehicular manslaughter and driving while intoxicated in violation of Vehicle and Traffic Law § 1992 (2) is that it rejected the testimony of the People's expert as to the range of defendant's blood alcohol content at the time of the accident, and the record contains more than ample additional evidence, including defendant's own admission that he had been drinking, to support the jury's conclusion that defendant was guilty of criminally negligent homicide and driving while his ability was impaired *(see, People v Reding,* 167 AD2d 716, 717, *lv denied* 77 NY2d 999).

Defendant next contends that the People violated the precepts of CPL 240.43 by inquiring of defendant, on cross-examination, whether he was racing a car following him from the fraternity house or racing another vehicle just prior to the happening of the accident. Defendant contends that this constituted an impermissible inquiry concerning prior uncharged criminal or immoral conduct without the benefit of a *Ventimiglia* hearing *(see, People v Ventimiglia,* 52 NY2d 350). We disagree. The inquiry concerns conduct which was part of the res gestae and because the record evinces a good-faith basis for such inquiry, no error occurred.

Defendant is quite correct, however, that his sentence of 30

---

\* It should be noted that the United States Supreme Court has recently rejected the requirement of *Frye v United States (supra)* that expert testimony be generally accepted in the scientific community in favor of the more liberal standards of Federal Rules of Evidence, rule 702 *(Daubert v Merrell Dow Pharms.,* 509 US —, 113 S Ct 2786).

days' incarceration upon his conviction of driving while ability impaired was illegal. The maximum sentence for a traffic infraction is a term of incarceration of 15 days *(see,* Penal Law § 70.15 [4]; Vehicle and Traffic Law § 1192 [1]) and the judgment must be modified accordingly. We have considered defendant's remaining contentions and find them to be without merit.

Yesawich Jr., J. P., White, Mahoney and Casey, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as sentenced defendant to 30 days' incarceration on his conviction for driving while ability impaired; defendant sentenced to 15 days upon said conviction; and, as so modified, affirmed, and matter remitted to the County Court of Rensselaer County for further proceedings pursuant to CPL 460.50 (5).