OPINION OF THE COURT
Robert S. Kreindler, J.
The People move for an order requiring defendant to allow *652 the taking of a quantity of blood from his body. The court orally granted the People’s motion on September 9, 1994.
Defendant cross-moves for an order compelling the District Attorney to provide discovery of documents relating to the HLA-DQ Alpha PCR DNA analysis of evidence obtained from a watch seized from defendant and of any other DNA analysis that may be performed in this case. Defendant requests an order compelling the prosecution to preserve the DNA sample from the watch, and that it inform defendant of the size of the sample and whether it would be consumed in further testing in order to allow defendant to determine whether he will conduct his own tests. Defendant also requests that the People provide defendant with a portion of DNA material extracted from fingernail scrapings of the decedent, Kathleen D’Angelo. Finally, defendant requests a Frye hearing to determine the admissibility of DNA evidence.
In determining this motion, the court has considered the People’s motion papers, and defendant’s papers in response.
FACTS
On August 21, 1993, the police found the decedent, Kathleen D’Angelo, in the back seat of a limousine parked in front of 220 Cadman Plaza West, Brooklyn, New York. Defendant was in the car with the decedent. The decedent had scratches and abrasions on her throat and was pronounced dead at Long Island College Hospital shortly thereafter. The Associate Medical Examiner determined that the decedent had died from strangulation.
On August 21, 1993, the police seized a yellow watch worn by the defendant on his left wrist. The police arrested defendant on August 27, 1993, for the murder of the decedent, and a Grand Jury later indicted him for two counts of murder in the second degree.
The Office of the Medical Examiner analyzed the watch and found traces of human flesh and blood on it. Testing showed that these traces were consistent with a specific genetic subtype and DNA/PCR DA-Alpha value present in a blood sample drawn from the decedent. The "stain and control” on the watch were consumed during the testing, but the laboratory has retained the DNA extract. Fingernail scrapings from the decedent were also tested, but no ascertainable DNA was found. These scrapings were also consumed in the testing process.
*653 people’s request for a blood sample
As noted, this court previously granted the People’s request for a blood sample from the defendant. The court’s reasons follow.
CPL 240.40 (2) (b) (v) governs the taking of blood from an indicted defendant. This section requires that the procedure not involve unreasonable intrusion or a risk of serious physical injury (CPL 240.40 [2] [b] [v]). Since the taking of blood is a safe and reliable procedure, the People have satisfied this requirement (Matter of Abe A., 56 NY2d 288).
Whether the requirements of Matter of Abe A. (56 NY2d 288, supra) apply postindictment is unclear. In any event, the People have met these requirements by showing probable cause to arrest defendant, the probative value of the evidence in excluding defendant as the source of the blood found on the watch, and the safety of the procedure for taking blood (see, supra, at 291).
For these reasons, the People’s request to take a sample of defendant’s blood has been granted.
defendant’s discovery request
Defendant requests discovery of:
1. The protocol of the Office of the Chief Medical Examiner, Department of Forensic Biology, concerning the performing of such testing;
2. Documents reflecting the proficiency testing for the analyst who performed said test;
3. The curriculum vitae of the analyst;
4. All laboratory notes generated by anyone engaged in the DNA testing;
5. Photographs of any and all typing strips which exist;
6. Copies of all logbooks concerning all instrumentation utilized in the performance of said tests;
7. All quality control documents including but not restricted to those concerning temperature controls;
8. Calibration logbooks for the scales and centrifuges utilized in performing the DNA testing;
9. Complete information and documentation concerning the data base utilized, the composition of that data base and the number of individuals in the data base; and
10. Any and all other documentation, notes or other papers *654 generated in any way by any individual involved in the performance of the DNA test analysis.
The People have consented to requests 1, 4 and 5.
Defendants are entitled to discovery of "written report[s] or document[s] * * * concerning a * * * scientific test * * * relating to the criminal action * * * which was made by, or at the request or direction of a public servant engaged in law enforcement activity” (CPL 240.20 [1] [c]).
The criminal discovery procedure under CPL article 240 evinces a legislative determination that a criminal trial should not be a sporting event where the opponent only discovers facts in the hands of the adversary at trial (People v Copicotto, 50 NY2d 222, 226). Broader pretrial discovery allows defendants to make more informed plea decisions, and increases the opportunity for accurate fact finding (supra).
In light of these concerns, defendants are entitled to discovery of documents relevant to the foundation of the scientific test at issue (see, People v Erickson, 156 AD2d 760, 762; People v Corley, 124 AD2d 390, 391; People v English, 103 AD2d 979).
This court finds that defendant’s request numbers 1, 4, 5, 6, 7, 8, 9 and 10 are relevant to the foundation for the admission of the DNA evidence. Defendant’s request for those documents is granted, except that the request for notes in 4 and 10 is limited to formal notes made as part of the testing protocol. "Scratch” notes made as memory aids or for personal computation are not discoverable (People v Slowe, 125 Misc 2d 591, 592-593; see also, People v Washington, 196 AD2d 346, 351-352, 352, n 4, lv granted 83 NY2d 1008).
Defendant’s request for documents relating to proficiency testing of the analyst and a request for the analyst’s curriculum vitae (requests 2 and 3) do not relate to the foundation for the tests. Moreover, the People may call another witness as the expert at trial. While defendant may be entitled to the curriculum vitae if the analyst testifies at trial (see, People v Rosario, 9 NY2d 286), defendant’s request is otherwise premature. Defendant’s request numbers 2 and 3 are denied.
PRESERVATION OF DNA SAMPLES
Defendant also moves for an order requiring the People to preserve and possibly disclose the DNA samples from the watch and the decedent’s fingernail scrapings. This issue has been rendered moot by the People’s admission that the sample from the watch was consumed during testing and that the *655 fingernail sample was also consumed during a test which revealed no ascertainable DNA. As conceded by the People, the defendant may inspect the DNA "extract” from the watch sample (see, People v White, 40 NY2d 797).
DNA TESTING
The remaining issue is whether a Frye hearing should be held to determine the reliability of the DNA testing (Frye v United States, 293 F 1013).
Expert testimony relating to scientific evidence can only be admitted if it is " 'generally accepted] as reliable’ ” within the relevant scientific community (People v Wesley, 83 NY2d 417, 422-423; People v Middleton, 54 NY2d 42, 49). There is no real dispute within the scientific community regarding the general theory underlying DNA identification (People v Golub, 196 AD2d 637, 637-638; People v Wesley, 183 AD2d 75, 78, affd 83 NY2d 417). In addition, the Court of Appeals has found that DNA profiling, using the restriction fragment length polymorphism (RFLP) technique, has been generally accepted as reliable by the relevant scientific community (People v Wesley, supra, 83 NY2d, at 425).
In Wesley (supra), the Court described the underlying theory of DNA and the RFLP process (see, supra, at 430-435). This court will not repeat that description.
This case involves the polymerase chain reaction (PCR) test.
The PCR procedure can test much smaller samples than the RFLP procedure. However, its ability to identify a particular individual to the exclusion of others is much lower (Annotation, Admissibility of DNA Identification Evidence, 84 ALR4th 313, 323). Although the initial step of extracting the DNA from a sample is similar to the first step of the RFLP test, the other steps in the PCR procedure involve different lab procedures (Spencer v Commonwealth, 240 Va 78, 393 SE2d 609, 620, cert denied 498 US 908).
There are no published opinions in New York on whether the PCR technique has been generally accepted as reliable. Several courts in other States have allowed admission of PCR test results (see, e.g., Seritt v State, — So 2d —, 1994 WL 128967 [Ala, Apr. 15, 1994, Montiel, J.]; State v Williams, 252 NJ Super 369, 599 A2d 960; State v Lyons, 124 Ore App 598, 863 P2d 1303, review allowed 319 Ore 406, 879 P2d 1284; Clarke v State, 813 SW2d 654, affd 839 SW2d 92 [Tex], cert denied — US —, 113 S Ct 1611; Spencer v Commonwealth, 240 *656 Va 78, 393 SE2d 609, supra; State v Russell, — P2d —, 1994 WL 557333 [Wash, Oct. 13, 1994, Madsen, J.]). The courts in Seritt, Williams and Russell admitted the PCR evidence under the Frye general acceptance test (Seritt v State, supra, — So 2d, at —, 1994 WL 128967, at 3; State v Williams, supra, 252 NJ Super, 599 A2d, at 964; State v Russell, supra, — P2d —, 1994 WL 557333, at 14). Although the court in Lyons did not decide admission under the Frye test, general acceptance of the procedure is an element of its evidentiary test (see, State v Lyons, supra, 863 P2d, at 1308). Based upon expert testimony and treatises, the court found that the PCR procedure has been generally accepted and is reliable (supra, at 1309). In addition, the court found that the PCR test is less prone to human errors associated with the RFLP technique (supra, at 1310). Although the courts in Clarke and Spencer did not use the Frye standard, based on expert testimony, both courts found that the PCR test results were sufficiently reliable to be submitted to the jury (Clarke v State, supra, 813 SW2d, at 655; Spencer v Commonwealth, supra, 240 Va, at —, 393 SE2d, at 621).
A court may find scientific tests reliable based on legal writings and judicial opinions (Matter of Lahey v Kelly, 71 NY2d 135, 144). In such a case, a hearing is not required for the admission of novel scientific evidence (see, e.g., People v Wesley, supra, 83 NY2d, at 426; Matter of Lahey v Kelly, supra, 71 NY2d, at 144; People v Middleton, 54 NY2d 42, supra).
Defendant has raised no question as to the reliability of PCR tests in his papers. In light of this failure, and in light of the acceptance of the test in other jurisdictions, this court finds that the PCR test has been generally accepted as reliable in the scientific community.
That the PCR test may only show that the defendant and the assailant are part of a relatively large group of people having the same characteristic goes to the weight of the evidence, not its admissibility (see, People v Mountain, 66 NY2d 197, 202). The fear that the PCR evidence may be given undue weight because it may be associated with the more discerning RFLP test may be dealt with by cross-examination *657 regarding the percentage of population involved and curative instructions, if necessary (see, supra, at 203).
Defendant’s motion for a Frye hearing is denied.
The motion is granted in part and denied in part in accordance herewith.