STATE of Missouri, Respondent,

v.

Cainon HOFF, Appellant.

No. 19721.

Missouri Court of Appeals,
Southern District,
Division Two.

July 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 21, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PREWITT, Judge.

Following jury trial, Defendant was convicted of burglary and rape. He was sentenced to consecutive terms of fifteen years and life. Defendant appeals, presenting four points relied on.

Defendant asserts through his first point that the trial court erred in failing to suppress statements he made to law enforcement officers. He claims violations of his constitutional rights because the officers "continued to question Appellant after Appellant invoked his right to counsel."

The Fifth Amendment's privilege against self-incrimination and the Sixth Amendment's right to counsel both apply to the states as a part of the due process guarantee of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Appellate review of a ruling on a motion to suppress is limited to whether the evidence is sufficient to support the trial court's ruling. *State v. Thompson,* 826 S.W.2d 17, 19 (Mo.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 242, 121 L.Ed.2d 176. Weight of the evidence and credibility of witnesses is generally for the trial court. *Id.* An appellate court considers the facts and reasonable inferences from the facts in the light most favorable to the ruling. *State v. Rodriguez,* 877 S.W.2d 106, 110 (Mo. banc 1994).

■ Once an accused has expressed his desire to communicate with law enforcement officers only through counsel, interrogation must cease until counsel has been made available. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Where the accused initiates further communications with the police, however, the accused's rights are not violated. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); *State v. Mease*, 842 S.W.2d 98, 107 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

■ While being interrogated, Defendant stated he wanted his attorney. The police officer then left the room and the sheriff entered and inquired of Defendant as to how he was doing. Defendant then started talking to the sheriff about the crime. The sheriff then informed the police officer that Defendant wanted to talk about the crime. The police officer re-entered the room, repeated the statement of Defendant's rights under *Miranda,* and Defendant then gave his statement. Based on these facts, Defendant's Fifth Amendment rights were not violated.

■ The Sixth Amendment right to counsel commences when adverse judicial proceedings are initiated. *State v. Beck,* 687 S.W.2d 155, 160 (Mo. banc 1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). No judicial proceedings against Defendant had started at the time he gave the statement, thus his Sixth Amendment rights were not violated. The first point is denied.

Defendant's second point goes to the testimony of Lance Antle, regarding the results of deoxyribonucleic acid (DNA) tests he performed on blood and semen taken from the victim's nightgown. Apparently, there are at least two methods of analyzing DNA. The method Antle used is known as the polymerase chain reaction technique (PCR). Defendant presents numerous contentions regarding that testing which we discuss in the order presented.

■ Defendant asserts that Antle is not qualified as an expert to perform the tests. Qualification of an expert is a matter resting primarily within the sound discretion of the trial court. *State v. Seddens,* 878 S.W.2d 89, 92 (Mo.App.1994). That qualification is determined by whether the expert has knowledge from education, prior experience, or both which will aid the trier of fact. *Id.*

■ Antle is a forensic serologist at Missouri Southern State Regional Crime Laboratory. He earned a Bachelor of Science degree in chemistry from the University of Missouri, and a Masters degree in forensic science from the University of New Haven. He did DNA testing in connection with receiving his Masters, and has taken a ten-day training course, and a one-week training course on such tests. Besides his university and training-course tests, he had run PCR tests on seventy-eight people, and performed them in more than ten criminal matters. There was no abuse of discretion in the trial court finding that he was qualified to perform the tests.

Defendant asserts that "the proper methodology" of the test was not established. A similar contention was made in *State v. Davis,* 814 S.W.2d 593 (Mo. banc 1991) regarding the restriction fragment length polymorphism (RFLP) technique of DNA testing. The court rejected the argument, stating, "the manner in which the tests were conducted goes more to the credibility of the witness and the weight of the evidence, which is in the first instant a discretionary call for the trial court and ultimately for the jury." 814 S.W.2d at 603. This contention is denied.

■ Antle testified that tests revealed that the sperm found on the nightgown "matched that of the defendant." Defendant contends that when the jury heard this testimony they were "likely to believe that the DNA evidence herein was conclusive." Defendant contends that this evidence should not have been admitted, as its prejudice outweighed any probative value. Defendant's expert testified that the percentage of the Caucasian population matching the result on the test of the semen ranged from 9.2% to almost 36%.

■ Of course, any evidence which adds to the proof of guilt is necessarily prejudicial. *State v. Anderson,* 862 S.W.2d 425, 432 (Mo.

App.1993). Whether to admit potentially prejudicial evidence is within the sound discretion of the trial court, which is in a better position to balance the probative value and the prejudicial effect than this court. *Id.*

As noted in *State v. Williams,* 252 N.J.Super. 369, 599 A.2d 960, 963 (1991), human characteristics such as age, weight, height, and color of hair and eyes are routinely admitted in evidence, although possessed by a large percentage of the population. "That the PCR test may only show that the defendant and the assailant are part of a relatively large group of people having the same characteristic, goes to the weight of the evidence, not its admissibility." *People v. Palumbo,* 162 Misc.2d 650, 618 N.Y.S.2d 197, 201 (1994). The trial court did not abuse its discretion in admitting the results of the test.

Defendant asserts that the state failed to establish that PCR testing has achieved general acceptance in the scientific community. Antle testified that it was generally accepted and other law enforcement agencies are using it. Numerous cases in various jurisdiction have found this method to be generally accepted and the test results admissible. Those cases include: *Seritt v. State,* 647 So.2d 1 (Ala.App.1994); *State v. Williams, supra; People v. Palumbo, supra; State v. Lyons,* 124 Or.App. 598, 863 P.2d 1303 (1993); *State v. Russell,* 125 Wash.2d 24, 882 P.2d 747 (1994). The trial court did not err in admitting the results of the tests. Point II is denied.

▌ Through his third point, Defendant challenges the sufficiency of the evidence to support the convictions. In reviewing this contention, the evidence and all reasonable inferences reasonably drawn therefrom are considered in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *Davis,* 814 S.W.2d at 594.

▌ The victim was raped in her home during the night. She had gone to sleep between eleven P.M. and midnight. She was awakened when a man entered her bedroom. The man smelled of beer. The doors of the home were locked, but the windows were open. There were screens over the windows. When the law enforcement officers arrived they saw that one screen in the bedroom had been cut and a bookshelf under the window pushed aside.

Defendant was seen by a police officer in the vicinity of the victim's home the morning the crime occurred. While at the sheriff's office for questioning, Appellant provided samples of pubic hair, head hair, saliva, and urine. Analysis revealed that his pubic hair sample matched pubic hairs found on the victim's nightgown.

The PCR testing earlier referred to revealed that the sperm found on the victim's nightgown matched Defendant's DNA. This match is shared by at least 9.2% of the Caucasian population. Defendant essentially admitted the crime, stating that the rape was "spur of the moment. I blacked out and lost it; didn't know what I was doing; couldn't control myself; was out to hurt somebody." This evidence was more than ample to support the jury's finding.

Appellant's remaining point asserts that the trial court erred in not granting a mistrial when a state's witness, Dr. Philip Whittle, said that he needed to retain hair samples for "another case 'related to this suspect.'" Defendant contends that this statement "improperly called Appellant's possible other bad acts to the attention of the jury." At the end of Whittle's testimony, the following is revealed by the transcript:

THE WITNESS [Dr. Whittle]: I assume I may take these samples back?

MR. MAPLES [Defendant's trial attorney]: We would like to have them available here tomorrow, if there's some way we can do that.

MR. WATSON [prosecuting attorney]: Well, with the luck we've had getting them back from the expert the first time around, Judge, I don't think I'm going to—

MR. MAPLES: Judge, I would like Dr. Whittle to either come back and bring them tomorrow, or leave them in the custody of the Court. I don't want to inconvenience Dr. Whittle, but—

THE WITNESS: I would gladly leave them in the custody of the Court, if that's acceptable.

MR. MAPLES: Or the Prosecutor, either; I'd have no objection.

THE WITNESS: I would like to have them back when the trial is finished.

THE COURT: I'll just take them.

THE WITNESS: These—there's two sets that were sort of superfluous to this group that I would like to keep, because they are involved in another case.

MR. MAPLES: Dr. Whittle, are those part of the hairs that were examined in this case, however?

THE WITNESS: Another case relative to this suspect.

MR. MAPLES: Could we keep those, if we give them back to you tomorrow, in the custody of the Court?

THE WITNESS: Well, I kind of have a problem with chain of custody, because they will be involved in—

MR. MAPLES: Judge, could we approach the bench for a minute?

 After the Defendant had moved for mistrial, the court denied it, indicating that he did not think the jury was affected by the comment. Declaring a mistrial is a drastic remedy to be exercised only in extraordinary circumstances. *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). The trial court, having observed the incident, is in a better position than an appellate court to evaluate prejudice, and this Court's review extends only to determining if there is an abuse of discretion. *Id.*

 A defendant has the right to be tried only for the offense charged and evidence which shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime violates this rule. *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128. Vague references, however, may not be clear evidence associating a defendant with another crime. *Id.* The remark was vague and did not clearly associate

Defendant with another crime. No abuse of discretion occurred. Point IV is denied.

The judgment is affirmed.

GARRISON, P.J., and PARRISH, J., concur.