723 So.2d 322 (1998)
Wilton A. DEDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2503
District Court of Appeal of Florida, Fifth District.
December 4, 1998.
Rehearing Denied January 11, 1999.
Milton Hirsch, Miami, for Appellant.
No Appearance for Appellee.
PER CURIAM.
AFFIRMED.
COBB and THOMPSON, JJ., concur.
W. SHARP, J., dissents with opinion.
W. SHARP, J., dissenting.
Dedge appeals from an order denying his motion to release trial evidence for the purpose of subjecting it to DNA testing.[1] The ultimate goal is to prove Dedge innocent of two sexual battery offenses, as well as two other related offenses of which he had been convicted in 1984,[2] thereby obtaining his release or discharge from prison for those convictions. He is currently serving two concurrent life sentences, plus consecutive 15 year sentences on the other offenses. I would grant the relief requested.
The trial court denied the motion because it found that Dedge's DNA claim was procedurally barred under Florida Rule of Criminal Procedure 3.850. The rationale for applying the two-year bar in this case was that the type of DNA testing Dedge sought to conduct (the PCR method) became available in 1993, and his motion was not filed until 1997. Thus any results of the test would be considered as "newly discovered," and barred by the two-year limitation in rule 3.850.
Based on the transcripts at trial and the record below, it appears that Dedge was arrested for offenses committed against Patricia Graham Rennie, after she was sexually assaulted in her home. Some time later, while at a convenience store with her sister, Rennie saw a man she said looked like her attacker. Her sister said she knew the man's name. Rennie saw him again at the same convenience store several days later. She thought about him being her attacker again and a few days later reported her charge to the sheriff's office. Dedge was arrested after his brother had been erroneously arrested, first.
The evidence of Dedge's guilt, other than the victim's testimony, was minimal. A pubic hair recovered from the crime scene established only that Dedge "could not be eliminated" as a possible source. An inmate who had his sentence reduced from 180 years to *323 60 years testified Dedge confessed to him he had committed the crimes. The prosecution also relied on a scent hound to establish Dedge had been at the victim's home. There was doubt as to the accuracy of the dogs, and there was testimony that they were incorrect 40% of the time. DNA testing was not performed because it was not in use in commercial laboratories until 1987.[3]
The first type of DNA testing developed was the RFLP (Restriction Fragment Length Polymorphism) method. It was held admissible in Florida in Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988). The PCR (Polymerase Chain Reaction) method sought to be employed in this case was not developed until 1985. Our research discloses the first appellate case which upheld the admission of that test in evidence was a Virginia court in 1990. Spencer v. Commonwealth of Virginia, 240 Va. 78, 393 S.E.2d 609 (Va.), cert. denied, 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235 (1990) (PCR method is sufficiently reliable to go to the jury). Even today, its admissibility in Florida may be the subject of dispute.[4]See Murray v. State, 692 So.2d 157 (Fla.1997). As explained in 1 Modern Scientific Evidence, "Forensic Identification," § 15-4.3 at 642 (1997):
PCR-based test evidence is being introduced in many cases, and courts in each jurisdiction must decide if this new mode of DNA typing satisfies the applicable test for admitting scientific evidence, regardless of whether RFLP-based evidence has been admitted.
The PCR method is more sophisticated[5] than the RFLP method, and it is the only kind of DNA test that can be used on DNA samples which are old, small, or deterioratedthe condition of the samples in this case. The PCR method can analyze partially degraded samples, which gives it a decided advantage over the RFLP method. In fact, the PCR method is often the only available method for testing small forensic samples due to the limited quantity of DNA available in the samples, which is often of insufficient quantity to perform RFLP analysis.
In Florida there is but one case which we have discovered that addresses the issue raised in this case. In Zeigler v. State, 654 So.2d 1162 (Fla.1995), Zeigler sought postconviction relief following an affirmance of his 1976 conviction and sentence for multiple murders. He sought release of blood stain evidence using modern DNA testing procedures. The circuit court denied his motion. The supreme court affirmed, holding that the motion was time barred. The court said:
Assuming for the sake of argument that the more sophisticated PCR method was not in use when Andrews was decided, Zeigler concedes that the method was available in 1991. Therefore, he should have raised the claim in his pending motion for post-conviction relief in order to avoid the procedural bar of successive motions. Instead, he waited in excess of two years before raising the claim in 1994.
Zeigler at 1164.
Further, the court noted that Zeigler had not presented a scenario under which new evidence resulting from DNA testing would have affected the outcome of the case. He admitted being at the scene of the crime and his blood, as well as the victims', was undisputedly present. The court denied his motion *324 additionally on the ground that it was based on "mere speculation," because he failed to present a reasonable hypothesis of how the new evidence would have resulted in a finding of innocence.
However, it appears that this case is distinguishable from Zeigler. There the evidence at trial showed Zeigler was at the crime scene and the issue was whether he had committed the murders. Thus, a finding that Zeigler's DNA was present would not have changed the outcome. In this case, however, there was no evidence or indication that Dedge's DNA could be at the crime scene, unless he was guilty. And its absence could only mean he was not guilty.
The relief sought in this case was not to vacate or set aside the conviction. Rather, it was to obtain the evidence for the purpose of testing it. Thereafter a 3.850 motion would likely be made if the DNA tests showed Dedge could not have been the perpetrator of the crimes. Even if barred by the two-year time limit of rule 3.850, the results of such a test could be a basis to seek a pardon, or other remedies. And unlike Zeigler, it is not clear that Dedge filed prior 3.850 motions.
Frankly, I think it is a very harsh reading of the two-year time limit in rule 3.850 to bar testing and perhaps relief from conviction under the circumstances of this case. Rule 3.850(b) bars relief in non-capital cases unless the facts on which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence. See Pope v. State, 702 So.2d 221, 223, n. 1 (Fla.1997); McCray v. State, 701 So.2d 1266 (Fla. 3d DCA 1997). DNA testing is a recent, highly accurate, application of scientific principles unknown at the time of Dedge's trial. It is not well known to or understood by most lawyers and judges, I would wager, even in 1998. I think it unfair and unrealistic to expect an indigent, serving two life sentences in prison, to have had notice of the existence of PCR-based testing, and possible application to his case prior to 1995 when it was first discussed by a Florida court. Zeigler. Further, even today it is not admissible, across the board.[6]
One of my worst nightmares as a judge, is and has been, that persons convicted and imprisoned in a "legal" proceeding, are in fact innocent. If there is a way to establish their true innocence on the basis of a highly accurate objective scientific test, like the PCR, in good conscience it should be permitted. This case calls out for such relief: the evidence of Dedge's guilt at trial was minimal; the PCR test had not been developed at the time of his trial. Even as this dissent is being written, admissibility of PCR tests in Florida courts is still being debated and the results of the tests, if successfully performed, will likely be absolutely conclusive of either his guilt or innocence. Not to do the testing consigns a possibly innocent man to spend the rest of his life in prison. I would reverse the order and direct release of the evidence for the purpose of DNA testing.
NOTES
[1] This is an appealable order under Florida Rule of Appellate Procedure 9.140. Kern v. State, 706 So.2d 1366 (Fla. 5th DCA 1998).
[2] Two counts of sexual battery (§ 794.011), aggravated battery (§ 784.045), and burglary (§ 810.02, Fla. Stat. (1983).
[3] It was first authorized for use in a New York State County Court case in July of 1988. People v. Wesley, 140 Misc.2d 306, 533 N.Y.S.2d 643 (N.Y.Co.Ct.1988), affirmed, 183 A.D.2d 75, 589 N.Y.S.2d 197 (N.Y.A.D.1992), and affirmed, 83 N.Y.2d 417, 611 N.Y.S.2d 97, 633 N.E.2d 451 (N.Y.1994). The next month, it was used in a civil (paternity) action in that same state. In the Matter of the Adoption of Baby Girl S, 140 Misc.2d 299, 532 N.Y.S.2d 634 (N.Y.Surr.Ct.1988), affirmed, 150 A.D.2d 993, 543 N.Y.S.2d 602 (N.Y.A.D.1989). The next court to authorize its use, in October of 1988, was this court. Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988). It appears federal courts first actually authorized DNA testing in United States v. Jakobetz, 747 F.Supp. 250 (D.C.Vt.1990), affirmed, 955 F.2d 786 (1992).
[4] Case law in Florida on the admissibility of the PCR method is sparse. The most recent case is Walker v. State, 707 So.2d 300 (Fla.1997) where testimony was admitted at trial based on the PCR method. However, the method was not challenged.
[5] The PCR method harnesses cellular enzymes to replicate portions of the DNA so that a sufficient number of copies of the DNA may be obtained in order to perform testing. 1 Modern Scientific Evidence, "Forensic Identification," § 16-3.0 at 679 (1997).
[6] There are only six Florida cases which mention the RFLP method, Wainwright v. State, 704 So.2d 511 (Fla.1997); Murray v. State, 692 So.2d 157 (Fla.1997); Henyard v. State, 689 So.2d 239 (Fla. 1996); Hayes v. State, 660 So.2d 257 (Fla.1995); Zeigler v. State, 654 So.2d 1162 (Fla.1995); Vargas v. State, 640 So.2d 1139 (Fla. 1st DCA 1994); and only three cases mention the PCR method. Walker; Murray and Zeigler.