OPINION OF THE COURT
Steven L. Barrett, J.
*767 Defendant’s motion to dismiss the indictment on the ground that the approximately 27-year delay in commencing the instant prosecution is a violation of his due process right to prompt prosecution is denied. Based upon the record, the People have satisfied their burden of establishing that the delay in prosecuting defendant was not unreasonable. (See People v Staley, 41 NY2d 789, 791 [1977].) In reaching this conclusion the court has considered the following factors: (1) the extent of the delay; (2) the reasons for the delay; (3) the nature of the underlying charge; (4) whether there has been an extended period of pretrial incarceration; and (5) whether there is any indication that the defense has been impaired by reason of the delay. (See People v Taranovich, 37 NY2d 442 [1975].)[1]
Although the delay in arresting defendant was indeed substantial, defendant’s claim that the prosecution has not established good cause for the delay is unavailing. Defendant, a thrice-convicted violent felon,[2] now stands indicted for the horrific murder of Noellis Bayanilla. At 5:00 a.m. on August 6, 1989, the unconscious body of then 17-year-old Noellis Baya-nilla was discovered in the rear courtyard of 2645 Morris Avenue. It was determined that Ms. Bayanilla was thrown off of the five-story building’s rooftop. Ms. Bayanilla sustained massive injuries, including multiple broken bones and internal injuries and, after two days of unimaginable suffering, succumbed to her injuries and died. The New York City Office of Chief Medical Examiner (OCME) found that Ms. Bayanilla sustained major and severe blunt force trauma and ruled her death to be a homicide. From the outset of the investigation, defendant was a suspect, as he was observed the morning of the incident with Ms. Bayanilla both outside 2645 Morris Avenue and then entering 2645 Morris Avenue with her. However, no witnesses observed defendant and Ms. Bayanilla on the roof and no witnesses observed defendant push Ms. Bayanilla off the rooftop. Moreover, no physical evidence recovered connected defendant to the murder, and when defendant was questioned *768 by the police he denied murdering Ms. Bayanilla and claimed he was at home at the time of her murder. Due to the insufficiency of the evidence, until 2016, neither defendant nor anyone else was arrested for murdering Ms. Bayanilla. (See affirmation of Assistant District Attorney [ADA] Newton Mendys at 2-3.)
The investigation remained dormant without any new leads until June of 2015, when Detective Matthew McCrosson was assigned to investigate the homicide of Ms. Bayanilla. In reviewing the case file, McCrosson discovered that fingernail clippings had been collected from Ms. Bayanilla during the autopsy performed by OCME at the time of her death. Mc-Crosson ascertained that the clippings had been preserved and requested that OCME perform DNA testing on them. OCME performed both STR (short tandem repeat) and Y-STR (Y chromosome short tandem repeat) testing and analysis on the clippings and, on March 16, 2016, issued a report indicating that a DNA profile of Male Donor A was generated from the fingernail clippings and that it matched defendant’s DNA profile that had been obtained from defendant during the course of his 2003 rape case. (See affirmation of ADA Newton Mendys at 4.) Having acquired the new DNA evidence, Detective McCrosson relocated and re-interviewed the witnesses to the murder. As a result, defendant was arrested and subsequently indicted and charged with murder in the second degree and manslaughter in the first degree, and, on April 7, 2016, he was arraigned on the instant indictment.
Based on the above, although the delay here was extraordinary, the court is satisfied that the People have met their burden of demonstrating good cause for the delay. During the vast majority of the time period between the death of Ms. Baya-nilla and defendant’s arrest, the People had a good faith basis to believe that there was insufficient evidence to arrest and prosecute defendant for the murder of Ms. Bayanilla. When the People acquired additional evidence that forms the basis for the instant prosecution, they expeditiously brought charges against defendant.
Defendant’s contention that the New York City Police Department (NYPD) should not be excused for their failure to request DNA testing on the fingernail clippings prior to 2015 is without merit. To be sure, in the serenity of chambers, it would be easy to play Monday morning quarterback and conclude that the NYPD should have acted sooner and submitted the clippings to *769 OCME earlier. However, to reach this conclusion would be to ignore the history of the development of DNA testing, and would also fail to give due deference to the NYPD in prioritizing their resources between new and old cases. Notably, in 1989-1990, when the instant investigation was still active, OCME was not yet accredited to perform forensic DNA testing.[3] (See OCME website, http://home2.nyc.gov/html/ocme/html/ fbio/ForensicBiology.shtml.) Indeed, OCME first began what is now perceived as rudimentary DNA testing in 1996, and even then there was no database into which DNA profiles generated from case evidence could be uploaded and DNA profiles from convicted felons could be stored.[4] Indeed, by the time such a database existed and defendant’s DNA profile from his 2003 rape case would have been stored in it, the investigation into Ms. Bayanilla’s death had long become inactive. Under these circumstances, if the court were to find fault in the NYPD for not requesting DNA testing on the clippings prior to 2015, in effect, it would be imposing upon the NYPD an unrealistic requirement to keep investigations open indefinitely. This the court will not do. Indeed, it is the court’s view that for having reopened a “cold” case when both DNA testing and the DNA databases had developed to a point that enabled the DNA match between defendant and the clippings, the NYPD, and, in particular, Detective McCrosson, should be lauded, rather than faulted.
Because there is no indication that the decision to bring the instant charges, notwithstanding the lengthy time period between the incident and the commencement of the instant criminal action, was made on anything other than good faith, the court finds good cause for the pre-indictment delay. (See People *770 v Decker, 13 NY3d at 15 [good cause for 15-year delay found where defendant charged with murder and People demonstrated that decision not to proceed with prosecution earlier was based on a good-faith determination that the evidence was insufficient at that time]; People v Fleming, 141 AD3d 408 [1st Dept 2016] [substantial pre-indictment delay justified in murder case where delay caused by prosecution’s need to strengthen case based on circumstantial evidence]; People v Allen, 134 AD3d 730 [2d Dept 2015] [extensive pre-indictment delay justified where defendant charged with murder and further investigation was conducted]; People v Nazario, 85 AD3d 577 [1st Dept 2011] [12-year investigative delay was satisfactorily explained where defendant charged with murder and People established that the delay was due to the People’s attempts to acquire substantial corroborating evidence and not due to bad faith].)
Moreover, the remainder of the Taranovich factors all strongly militate in favor of denying the instant claim. Not only has defendant been indicted for murder, the most serious of offenses, but the particulars of this murder are particularly grotesque. Indeed, it is difficult to find words to describe the terror this innocent, teenage girl must have felt when she was pushed off the rooftop and the suffering that she must have endured in the two days that she clung to life. Moreover, defendant was incarcerated on this charge for only a few days before he was indicted on March 18, 2016,[5] and defendant has failed to advance any claim or contention that his defense will be significantly impaired by the delay. (See People v Decker, 13 NY3d at 16 [court finds notwithstanding the fact that with a 15-year delay witnesses’ memories will fade and witnesses will be harder to locate, defendant still failed to establish that the defense was significantly impaired]; People v Vernace, 96 NY2d at 887 [extensive delay not a basis for a finding of a due process violation even though such delay may result in some prejudice to defendant; court notes that delay will also make the case against defendant more difficult to prove].) Having failed to establish prejudice, or any other basis for dismissal on this ground, defendant’s motion to dismiss the indictment based on a violation of his due process right to prompt prosecution is denied. (See People v Guerrero, 126 AD3d 613 [1st Dept 2015] *771 [no constitutional speedy trial violation where 13-year delay and People’s inability to proceed explained by inability to prosecute defendant until DNA match].) However, as the People concede, count two charging manslaughter in the first degree is dismissed as time-barred.

. Although the Taranovich factors cited above specifically apply to a defendant’s constitutional right to a speedy trial, they are also to be employed to determine whether there has been a violation of a defendant’s due process right to prompt prosecution. (See People v Decker, 13 NY3d 12, 15 [2009]; People v Vernace, 96 NY2d 886, 887 [2001].)

. Defendant’s criminal history includes a 1990 robbery conviction for which he served an indeterminate term of imprisonment of 2V3 to 7 years, a 1996 attempted murder conviction for which he served an indeterminate term of 7V2 to 15 years, and a 2003 rape conviction for which he served an indeterminate term of 7 to 14 years.

. The court also notes that it wasn’t until 1994 that the Court of Appeals first found DNA evidence (utilizing the now outmoded RFLP method of testing) to be generally accepted and reliable and therefore admissible at trial. (See People v Wesley, 83 NY2d 417 [1994].) It also should be noted that the early criminal cases in New York in which DNA testing was utilized, it was so utilized in cases where the evidence to be analyzed and tested was either blood or some other bodily fluid such as semen and the testing was done by a lab other than OCME. (See e.g. People v Golub, 196 AD2d 637 [2d Dept 1993]; People v Mohit, 153 Mise 2d 22 [Westchester County Ct 1992]; People v Shi Fu Huang, 145 Mise 2d 513 [Nassau County Ct 1989]; People v Castro, 144 Mise 2d 956 [Sup Ct, Bronx County 1989]; People v Wesley, 140 Mise 2d 306 [Albany County Ct 1988].)

. OCME joined the Combined DNA Index System, the national DNA database in 2000. (See OCME website, http://home2.nyc.gov/html/ocme/html/ fbio/ForensicBiology.shtml.)

. It should be noted that it appears from defendant’s rap sheet that he had been incarcerated for most of the time period between 1989 and 2016 on his three felony convictions.