People v Elmore (2019 NY Slip Op 06614)





People v Elmore


2019 NY Slip Op 06614


Decided on September 18, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 18, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOSEPH J. MALTESE
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2017-03883
 (Ind. No. 2841/15)

[*1]The People of the State of New York, respondent,
v
Emmanuel Elmore, appellant.


Paul Skip Laisure, New York, NY (Jenin Younes of counsel), for appellant.
John M. Ryan, Acting District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Roni C. Piplani, and Michelle M. Yong of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ira H. Margulis, J.), rendered March 16, 2017, convicting him of burglary in the second degree, grand larceny in the fourth degree (five counts), and criminal possession of stolen property in the fourth degree (five counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
Contrary to the defendant's contention, at trial, the Supreme Court did not improperly curtail the scope of cross-examination of the lead detective. "The trial court has broad discretion in limiting cross-examination when questions are repetitive, irrelevant, only marginally relevant, or concern collateral issues" (People v Ahsan, 169 AD3d 815, 816). "If the cross-examiner seeks to explore more than mere general credibility, as, for example, to establish bias or interest, the subject of the inquiry is not collateral" (People v Chin, 67 NY2d 22, 28). Here, defense counsel's arguments before the court demonstrate that her proposed line of questioning "was designed to attack [the detective's] general credibility, rather than an attempt to establish a specific motive to fabricate" (People v Williamson, 77 AD3d 1183, 1184; see People v Roberson, 276 AD2d 446, 446; People v Esposito, 225 AD2d 928, 931) or "to establish the untruthfulness of his testimony with respect to the specific events of the crime charged" (People v Batista, 113 AD2d 890, 892; see People v Allen, 67 AD2d 558, affd 50 NY2d 898). Under the circumstances of this case, the court providently exercised its discretion in precluding the proposed line of questioning.
There is no merit to the defendant's contention that the Supreme Court should have admitted certain fingerprint evidence. The People's witness was qualified to render an expert opinion in the field of latent print examination and identification, as he demonstrated that he possessed the requisite skill, training, education, knowledge, or experience to render a reliable opinion in that field (see People v Mazariego, 117 AD3d 1082; People v Washington, 108 AD3d 576; People v Menendez, 50 AD3d 1061). "Any weakness in the fingerprint expert's testimony went to credibility and weight of the evidence rather than to its admissibility" (People v Jackson, 125 AD3d 1002, 1004; see People v Fraser, 162 AD3d 480, 481; People v Garcia, 299 AD2d 493, 493; [*2]People v Wesley, 183 AD2d 75, 78, affd 83 NY2d 417). The People also laid the proper foundation for the admission of the fingerprint evidence (see People v Jackson, 25 AD3d 1012).
The sentence imposed on the conviction of burglary in the second degree was not excessive (see People v Suitte, 90 AD2d 80).
MASTRO, J.P., MALTESE, CONNOLLY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court