OPINION OF THE COURT
Chief Judge Wachtler
The defendant, a former police officer, has been convicted of raping and sodomizing a woman being held for arraignment in a detention cell at a police station. The Appellate Division affirmed the conviction and the defendant has appealed by leave of a Judge of this court.
The defendant raises a number of issues, most of which relate to the admission or exclusion of evidence at the trial. The primary issue concerns efforts by the prosecutor to establish a relationship between the defendant’s blood type and the blood type found in the assailant’s sperm, a procedure universally accepted in other jurisdictions but previously not allowed in this State in cases, such as this, where the blood type is a common one.
In the early morning hours of Saturday, September 12, 1981 the Schenectady Police arrested a young woman on a minor *200 charge. She was transported to a police station where she was held in a detention cell for arraignment on Monday morning. On the day of the arrest the defendant was a police officer assigned to that station as a telephone operator. Although his duties did not require him to care for the female detainees, who were in the charge of a matron, he approached the complainant several times during the first day of her detention. He initially inquired about her bail and then suggested he could help her or indicated that he was attempting to raise money for her release. He also called her and gave her a telephone number at which he could be reached. On another occasion that day he gave her a note asking her to call him at a certain number if she was released.
On Sunday afternoon the defendant again came to the complainant’s cell. He unlocked the door and asked her if she was ready and when she said she was, he pointed to something behind her. As she turned the defendant grabbed her throat, cupped his hand over her mouth, told her to pull down her pants and warned her that he would kill her if she screamed. He then forced her to her knees and proceeded to rape her. After experiencing some difficulty, he told her to perform oral sodomy on him. When that act was completed the defendant left and the complainant spit his sperm into a paper cup from her lunch tray.
She did not inform the matron then in charge what had occurred. However, when that matron was relieved she soon informed the new matron that she had been raped and that she had a "specimen”. When she left her cell the following morning she crushed the cup and put it in her pocket. At her arraignment the charge against her was dismissed because the person who had made the complaint against her did not appear. She then informed the court that she had been raped and had a specimen. At the court’s suggestion she reported the incident to a police officer in the building. After her release she went to her girlfriend’s house and then immediately to St. Clare’s Hospital where she again reported the rape and produced the cup. The hospital examination revealed sperm in her vagina. A laboratory examination of the cup showed that it contained sperm. A blood test of the sperm indicated that it contained type A blood.
The defendant was indicted for rape, sodomy, and official misconduct. The prosecutor applied for and was granted an order directing the defendant to submit to a blood test and provide a handwriting sample. Based on the handwriting sample an expert concluded that the note the complainant had received in the detention cell was written by the defendant. The police investiga *201 tian also revealed that the telephone number on the note was registered to the security office in St. Clare’s Hospital where the defendant was employed part time as a security guard.
In his opening statement the prosecutor informed the jury that they were going to hear testimony with regard to the blood type of the sperm found in the cup, as well as the blood type of the defendant. The defendant objected to the introduction of this evidence but the court sustained the objection only to the extent of excluding evidence of the defendant’s blood type. The blood type of the sperm in the cup and the fact that a blood test was performed on the defendant, together with the other evidence set forth above, was submitted to the jury. The defendant did not testify on his own behalf.
During their deliberations the jury asked the court whether the defendant’s blood type was in evidence and were informed that it was not. The jury found the defendant guilty of rape, sodomy, and two counts of official misconduct. The Appellate Division unanimously affirmed (105 AD2d 494).
On this appeal the defendant urges that the court erred in permitting the prosecutor to introduce evidence that the assailant’s sperm contained type A blood, and allowing "references” to the defendant’s blood type. He relies on People v Robinson (27 NY2d 864).
In the Robinson case this court stated at page 865: "Proof that the defendant had type 'A’ blood and that the semen found in and on the body of the decedent was derived from a man with type 'A’ blood was of no probative value in the case against defendant in view of the large proportion of the general population having blood of this type and, therefore, should not have been admitted”. That case is distinguishable because there the relationship between the defendant’s blood type and the assailant’s was established. In the case now before us the connection was not made because the defendant successfully objected to the introduction of evidence of his blood type. It may be, as the defendant suggests, that the jury was confused by the evidence of blood testing and typing. The evidence was so nearly complete that an inattentive jury might have been misled into believing that the relationship had been established. On the other hand, the jury did ask the court during deliberations whether the defendant’s blood type was in evidence and was informed that it was not. Thus it appears that the defendant was not prejudiced by the proof because the jury detected the gap and realized that the People had not proven that the defendant had the same blood type as the rapist.
*202 In essence the defendant urges that the Robinson rule should be extended to make it reversible error whenever the court admits evidence that the assailant had a common blood type. However, thorough consideration of the Robinson rule shows that it is not well founded and should no longer be followed.
The Robinson decision itself is a two-line memorandum in which the court stated the rule quoted above but nevertheless affirmed the conviction on harmless error grounds (People v Robinson, 27 NY2d 864, supra). It was followed in People v Macedonio (42 NY2d 944), where the conviction was reversed with the court noting in another brief memorandum, the introduction of the blood evidence and the fact that the prosecutor had introduced a confession obtained in violation of the defendant’s constitutional rights. More recently in Matter of Abe A. (56 NY2d 288, 299), where the blood type at issue was found in less than 1% of the population, Robinson was found inapplicable. The court stated at page 299: "The scientific validity and reliability of tests used to identify the type of blood a particular individual carries and to determine whether the blood of one person matches that of another are well recognized in both the medical and legal communities [citations omitted]. Moreover, the relative rarity of the assailant’s type of blood relegates arguments as to remoteness to the realm of weight rather than admissibility”.
The Robinson rule has been criticized by noted scholars (see, e.g., McCormick, Evidence § 205, at 619 [3d ed]) and in other jurisdictions has been universally rejected (see, People v Lindsey, 84 Cal App 3d 851, 149 Cal Rptr 47; Admissibility, Weight, and Sufficiency of Blood-Grouping tests in Criminal Cases, Ann., 2 ALR4th 500, 511-512). For a time it appeared that Iowa would accept the rule (see, State v Peterson, 219 NW2d 665) but now it is clear that New York stands alone (see, State v Mark, 286 NW2d 396, 412-413 [Iowa]; McCormick, Evidence § 205, at 619, n 31 [3d ed]).
The basic problem with the rule is the premise on which it is founded. Although blood grouping may only serve to show that the defendant and the assailant are part of a large group having that particular characteristic, it does not follow that such proof completely lacks probative value. When identity is in issue, proof that the defendant and the perpetrator share similar physical characteristics is not rendered inadmissible simply because those characteristics are also shared by large segments of the population. For instance, evidence that the person who committed the crime was white would not be excluded although that may in- *203 elude 80% of the population. Similarly, evidence of a person’s sex, which would include roughly 50% of the general population, is routinely accepted as having some probative value with respect to identification. Proof of such common characteristics, of little value individually, may acquire great probative value when considered cumulatively (McCormick, Evidence § 171, at 364-365 [1954]). Thus, the Robinson rule goes too far in holding that evidence showing that the defendant and the assailant have type A blood, is of no probative value merely because that includes 40% of the population (see, Matter of Abe A., supra, at p 299, n 4).
It appears that the only justification for excluding such evidence is a fear that the jury may accord it undue weight, beyond its probative value, because of its scientific basis (cf. Richardson, Evidence § 147 [10th ed]). That, however, can generally be avoided by instructions, where requested, emphasizing the fact that it is only circumstantial evidence and noting, perhaps, the percentage of the population involved. In cases where the defendant can show that the potential prejudice outweighs the probative value the court may in its discretion exclude the evidence.
In sum, there is no showing that the defendant was prejudiced by the blood test evidence in this case, and in future cases such evidence should be admissible unless prejudice is shown.
The defendant also claims that the court made erroneous evidentiary rulings on collateral matters concerning the victim’s credibility.
First, the defendant urges that the court improperly permitted the prosecutor to bolster the victim’s credibility with respect to her motive for bringing a civil suit based on the sexual assault. At the trial the defendant introduced evidence that the victim had falsely accused him in order to recover a substantial monetary award in the pending civil action. In rebuttal the People introduced proof that the victim had originally consulted a lawyer because she was afraid and intended to donate any money realized from the suit, in excess of counsel fees, to an organization known as "Rape Crisis”. In support of his contention the defendant relied on two witnesses, with criminal records, who testified to statements they had allegedly heard the victim make. The prosecutor, in rebuttal, relied on the victim’s lawyer to testify to statements and instructions she had allegedly given to him in connection with the pending civil suit.
Although the defendant now contends that the People should not have been permitted to bolster the victim’s credibility, his objection at trial was to relevancy. That objection was prop *204 erly overruled since the evidence was relevant to rebut the defendant’s contention that the victim had a pecuniary motive for testifying falsely against the defendant.
The defendant also urges that the type of proof was improper because the prosecutor did not rely on the victim’s own testimony but on statements she allegedly made to another outside the courtroom. He claims that this proof should have been excluded as inadmissible hearsay. However, when the victim’s attorney was questioned with respect to his client’s instructions for the disposition of any money that might be realized from the civil suit the defendant did not object on hearsay grounds. He claimed instead that the question was irrelevant and also inadmissible because the victim’s statements were not made in the defendant’s presence. The court properly overruled those objections.
A second credibility ruling which the defendant claims was error relates to a holster belonging to him which the court excluded from evidence. At the trial the victim testified that during the attack the defendant wore a holster that completely covered his gun. The defendant claims that the holster he offered in evidence would have shown that the victim was not truthful on this point because the holster left the handle of the gun exposed.
The holster, however, was for the defendant’s "off-duty” gun, and was excluded by the court on the ground that the defendant had not established a proper foundation to show that it was the holster he wore on the day of the crime. The record on this point shows that the defendant produced his off-duty gun in a holster, inside an evidence envelope. The issue focused on the identity of the gun or weapon which was explored at some length, with only incidental references to a holster. In fact the stray comments on the holster were, for the most part, volunteered by the defendant’s witnesses. There was no direct evidence that this was the holster the defendant was wearing on the day of the crime. Neither of the witnesses called by the defendant with respect to his off-duty gun were able to state which gun or holster the defendant was wearing on the day of the crime. When the court informed the defendant that there was no foundation for the admission of the holster the defendant did not offer to cure the defect nor did he alert the court to the reason why he wanted the holster admitted.
Although a technical argument could be made, as the dissenter has done here, that there was some foundation for the admission of the holster, it is clear from the record that defense *205 counsel focused the attention of the court and the prosecutor on the gun. He created the impression that he was seeking to introduce the gun or weapon, and that the holster was of little or no significance. Indeed, even when the court informed the defendant that it was the court’s understanding that only the weapon was in issue, the defendant did nothing to correct the impression he had created by informing the court of the significance of the holster. Nor did he offer to cure the defect by seeking to call a witness who could testify that he had seen the defendant wear his "off-duty” gun and holster "on duty” on the day of the crime (cf. People v Olsen, 34 NY2d 349). Thus we find no error in the court’s decision to exclude it.
The defendant also contends that the trial court deprived him of a public trial and improperly precluded him from cross-examining the victim pursuant to CPL 60.42 (4). These issues were discussed by the Appellate Division and we agree with that court, for the reasons stated in its memorandum (105 AD2d 494, supra), that the trial court did not err as alleged. We have considered the defendant’s remaining points and have found that they lack merit.
Accordingly, the order of the Appellate Division should be affirmed.