■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACKIE JOHNSON, Appellant.—Judgment unanimously affirmed. Memorandum: Defendant appeals from a judgment, upon a jury verdict, convicting him of two counts of murder in the second degree (intentional murder under Penal Law § 125.25 [1] and "felony murder" under Penal Law § 125.25 [3]), and one count of robbery in the second degree (Penal Law § 160.10 [2] [a]) and grand larceny in the third degree (Penal Law former § 155.30). The convictions stem from the murder of Edward McFarland, who was found on the afternoon of October 27, 1979, beaten to death in a ditch off the New York State Thruway in Cheektowaga, New York. While there were no eyewitnesses to the murder and no direct proof as to who killed the victim, the circumstantial evidence presented at trial was compelling. Viewing the evidence adduced in the light most favorable to the People, giving it the benefit of every reasonable inference to be drawn therefrom, the jury could reasonably conclude that the defendant's guilt was proven to a moral certainty (People v Betancourt, 68 NY2d 707, 709-710).

It was established that defendant, codefendant and the victim were all seen at the Elk's Club in the City of Rochester

during the early morning hours of October 27, 1979. Defendant was observed putting a suitcase in a car. The car, which was similar to the victim's, had two other people inside it. The following afternoon, shortly after the victim's body was found, defendant used the victim's credit card at a Buffalo gas station to purchase gas for the victim's car which he was driving. Defendant asked the attendant for directions to Chester, Pennsylvania. Defendant and his codefendant were located in Pennsylvania where they were in possession of the victim's car. Police also found the victim's wallet, credit card and other personal property in the home of defendant's aunt, where defendant and codefendant was staying. The codefendant was observed wiping the car inside and out with a rag. Defendant's suitcase contained blood-stained clothing and the car also contained blood stains inside and in the trunk. A jack in the trunk contained human blood and hair. The victim's skull was fractured with a blunt instrument.

Viewing this evidence in its totality, the jury could reasonably conclude that defendant and his codefendant, acting in concert, beat and robbed the victim in his car, dumped the victim's body in a ditch off the Thruway and fled to Pennsylvania where they were arrested in possession of the victim's car and personal property. Thus, the circumstantial evidence was clearly legally sufficient to establish defendant's guilt " 'to a moral certainty' " *(People v Kennedy,* 47 NY2d 196, 202, *rearg dismissed* 48 NY2d 635, 656; *People v Benzinger,* 36 NY2d 29, 32; *People v Cleague,* 22 NY2d 363, 365, 366).

On this record, there is no support for defendant's claim that his defense was substantially impaired by a joint trial *(People v Cruz,* 66 NY2d 61, 73-74, *revd on other grounds* 481 US —, 107 S Ct 1714; *People v Compitiello,* 118 AD2d 720, *lv denied* 67 NY2d 941). Although no proper foundation was laid for the testimony relating to comparison of fingerprints found in the victim's vehicle with defendant's "known" fingerprints, the trial court sustained defendant's objection and instructed the jury to disregard the fingerprint comparison "because of the failure of the quality of proof". Moreover, there was other direct testimony linking defendant to the victim's car. The testimony concerning the victim's blood type was properly admitted into evidence *(see, People v Mountain,* 66 NY2d 197, 202-203).

In view of the brutal nature of this crime and defendant's prior record, the court did not abuse its discretion in sentencing the defendant to an indeterminate term of 22 years to life in prison, which is less than the maximum permissible term.

(Appeal from judgment of Supreme Court, Erie County, Stiller, J.—murder, second degree, and other offenses.) Present—Dillon, P. J., Callahan, Denman, Pine and Balio, JJ.