■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO MORALES, Appellant. [643 NYS2d 217] —Appeal by the defendant from a judgment of the County Court, Rockland County (Kelly, J.), rendered September 7, 1994, convicting him of murder in the second degree, attempted murder in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The

appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony.

Ordered that the judgment is affirmed.

The defendant shot two men, killing one of them, in a drug-related dispute. Contrary to the defendant's contention, the People proved by clear and convincing evidence that the complainant had an independent source to identify the defendant in court. The complainant testified that before unlocking the front door of his apartment, he looked out the window and, in the porch light, saw the defendant and a man known to him as "G". The complainant recognized the defendant because he had been to the apartment just one month before with "G". When the door burst open, the complainant, with an unobstructed view, saw the defendant fire a gun at him. Thus, the complainant not only had a sufficient opportunity to view the defendant (*Neil v Biggers,* 409 US 188), but also had a prior familiarity with him (*see, People v Thomas,* 188 AD2d 569; *see also, People v Tas,* 51 NY2d 915).

The defendant, who suffered a gunshot wound to the thumb in the course of the crime, contends that the trial court erred in permitting the People to present evidence obtained by the polymerase-chain-reaction method (hereinafter PCR method) of DNA profiling. The test matched the defendant's blood with blood samples taken from the getaway car owned by "G", with a 1 in 2,234 probability of a random match. At the time of trial, evidence obtained through the restriction-fragment-length-polymorphism method (hereinafter RFLP method) of DNA profiling had been found to be admissible in New York (*see, People v Wesley,* 83 NY2d 417). However, the newer PCR method had not yet been the subject of an appellate decision in this State. The trial court therefore conducted a hearing pursuant to *Frye v United States* (293 F 1013). We agree with the court that the hearing evidence sufficiently established that the reliability of the PCR method had gained general acceptance in the relevant scientific community so as to permit the submission of evidence obtained by that method to a jury (*see, People v Palumbo,* 162 Misc 2d 650).

At the *Frye* hearing the People presented testimony from three highly qualified experts in the field of DNA testing, namely Dr. David Bing, Scientific Director of the Center for Blood Research Laboratories (hereinafter CBR Labs), which is affiliated with the Harvard Medical School where Bing is a member of the Department of Medicine; Dr. Robert Shaler, the Director of Forensic Biology for the Office of the Chief Medical

Examiner for New York City; and Dr. Kenneth Kidd, a full professor at the Yale University School of Medicine's Department of Genetics. Their testimony established that the PCR method had been validated by numerous peer-reviewed articles in the scientific literature, was used in an increasing number of forensic laboratories throughout the United States and the world, and was widely accepted within the scientific community as reliable for forensic applications. The People also demonstrated that the PCR method was better suited than the RFLP method for forensic use since it was capable of testing smaller and degraded samples, usually the only type available at a crime scene.

CBR Labs performed the testing in this case using the HLA-DQ Alpha and the newer Amplitype PM or Polymarker variants of the PCR method. The hearing testimony showed that the two tests are based on the same scientific principles and have nearly identical methodologies and protocols, but use different primers and probes because they target different genetic loci. The HLA-DQ Alpha test targets one genetic locus while the Polymarker test targets six loci. Thus, any validation studies regarding the HLA-DQ Alpha test were applicable as well to the Polymarker test. Furthermore, Dr. Bing explained that the lack of published, peer-reviewed articles validating the Polymarker test in particular was due to the lengthy peer-review process and not to any discord in the scientific community as to its validity. Moreover, Polymarker testing had been validated by internal studies at CBR Labs and many of the other 25 individual labs known by Dr. Bing to be using that method.

Accordingly, we reject the defendant's argument that the Polymarker variant of the PCR method was too new and untested to be considered reliable. While the defendant's expert expressed that opinion at the hearing, he also testified that he had never used the Polymarker test kit, was unaware of any particular problems with it, and knew of no studies supporting his view. In any event, *Frye* requires only general, not unanimous, acceptance by the scientific community (*see, People v Middleton,* 54 NY2d 42).

We note, in addition, that there has been an overwhelming acceptance of PCR methodology in other States, many of which apply the *Frye* standard of reliability (*see, People v Amundson,* 48 Cal App 4th 788, 41 Cal Rptr 2d 127; *Harmon v State,* 908 P2d 434 [Alaska]; *State v Johnson,* 183 Ariz 623, 905 P2d 1002; *State v Hill,* 257 Kan 774, 895 P2d 1238; *State v Gentry,* 125 Wash 2d 570, 888 P2d 1105; *People v Lee,* 212 Mich App 228,

537 NW2d 233; *Seritt v State,* 647 So 2d 1 [Ala]; *State v Spencer,* 663 So 2d 271 [La]; *see also, State v Begley,* 1996 WL 12152 [Tenn Ct of Crim Appeals, Jan. 11, 1996]; *State v Williams,* 252 NJ Super 369, 599 A2d 960; *Redding v State,* 464 SE2d 824 [Ga]; *Campbell v State,* 910 SW2d 475 [Tex]; *Spencer v Commonwealth,* 240 Va 78, 393 SE2d 609).

The defendant also seeks reversal based on Detective Woulfe's rebuttal testimony that he arrested the defendant after the complainant identified him as the shooter. While this testimony improperly bolstered the complainant's in-court identification in violation of *People v Trowbridge* (305 NY 471), the error was harmless in light of the overwhelming evidence of the defendant's guilt (*see, People v Johnson,* 57 NY2d 969; *People v Staley,* 182 AD2d 846).

The defendant's remaining contentions are without merit. Rosenblatt, J. P., Miller, Pizzuto and Goldstein, JJ., concur.