*169 OPINION OF THE COURT
Ariel E. Belen, J.
Plaintiff, Gerard Hassett, brought this action against the Long Island Railroad (LIRR) pursuant to the Federal Employers’ Liability Act (45 USC § 51 [FELA]). Pursuant to the FELA, a railroad has a nondelegable, continuing duty to exercise reasonable care in furnishing its employees a safe place to work. Mr. Hassett claimed that he sustained a permanent injury in the course of his employment as a pipe fitter for the LIRR.
The plaintiff alleged that he developed bilateral carpal tunnel syndrome (CTS) as a result of LIRR’s breach of its duty to provide him with a safe working environment. A jury found, after trial, that the parties were comparatively negligent and allocated liability at 64% against LIRR and 36% against Mr. Has-sett. After this finding, the same jury went on to consider damages in this bifurcated trial and awarded Mr. Hassett $132,000 for future pain and suffering. LIRR now moves for judgment notwithstanding the jury’s verdict pursuant to CPLR 4404 (a) or, in the alternative, for a new trial.
The railroad contends that the testimony offered by the plaintiff’s expert, Dr. Richard Lynch, was inadmissible under the Frye standard of reliability of scientific testimony traditionally relied upon by the New York state courts. {Frye v United States, 293 F 1013, 1014 [DC Cir 1923].) Dr. Lynch testified that he is a certified industrial hygienist who has published and lectured extensively on the subject of CTS. He testified that he had 14 years of experience in the recognition, evaluation, and control of workplace safety and health risks, in addition to formal masters and doctoral training in the field of industrial hygiene. Currently, he is an assistant professor in the Department of Urban Studies and Community Health at Rutgers University and is affiliated with Environmental Safety Management Corporation, an industrial hygiene consulting company.
Carpal tunnel syndrome is a chronic and painful condition that occurs when the medial nerve becomes compressed as it runs through the wrist. Mr. Hassett alleged that his job as a pipe fitter for the LIRR required him to use a variety of hand tools in a repetitive manner which placed him at a high risk for contracting CTS.
Dr. Lynch testified that, in order to evaluate a workstation for the presence of carpal tunnel syndrome risk factors, an industrial hygienist typically gathers information about a given *170 job by performing a number of steps. These steps included inspecting the tools involved in the performance of different tasks, videotaping of the actual work being performed, measuring the posture of an employee while he is performing the work, and measuring any mitigating factors. Although Dr. Lynch teaches this methodology to his students and conforms to it while consulting, curiously his testimony in the present case was based solely upon a review of plaintiffs deposition and a 10-minute interview with the plaintiff and plaintiffs attorney shortly before taking the stand. He never met Mr. Hassett before he spoke with him in the hallway outside the courtroom minutes before testifying.
The admissibility of expert testimony is addressed to the sound discretion of a trial judge. (De Long v County of Erie, 60 NY2d 296, 307 [1983]; Wichy v City of New York, 304 AD2d 755, 756 [2d Dept 2003].) In general, expert testimony is proper when the jury would benefit from the specialized technical knowledge of an expert witness. (People v Cronin, 60 NY2d 430, 433 [1983]; Wichy, 304 AD2d at 756.) Furthermore, before admitting the testimony, a trial judge must insure its trustworthiness by verifying the expert’s qualifications and the reliability of the scientific principles and procedures employed by the expert in reaching his opinion.
Dr. Richard Lynch presented appropriate credentials to qualify as an industrial hygiene expert who possessed “the requisite skill, training, education, knowledge, [and] experience” to render a reliable opinion. (Matott v Ward, 48 NY2d 455, 459 [1979]; Pignataro v Galarzia, 303 AD2d 667, 668 [2d Dept 2003].) As a certified industrial hygienist with formal doctoral training and over 14 years of practical experience, Dr. Lynch clearly possessed the necessary qualifications to evaluate whether the Long Island Railroad breached its duty to protect Mr. Hassett from injury as mandated by the Federal Employers’ Liability Act.
Currently, the New York courts apply a standard that was first articulated in Frye (293 F at 1014) in determining the reliability of expert testimony. The Frye standard, in essence, states that expert testimony based on a scientific principle or a procedure is only admissible after the “principle or procedure has gained general acceptance in its specified field.” (People v Wesley, 83 NY2d 417, 422 [1994] [internal quotation marks omitted]; People v Morales, 227 AD2d 648, 649 [2d Dept 1996];. see People v Chambers, 6 AD3d 454 [2d Dept 2004].)
*171 In Morales, the State used a new method of DNA profiling to match defendant’s blood with blood samples taken from a getaway car used in the commission of a murder. (Morales, 227 AD2d at 649.) Although this method was new, the evidence at the Frye hearing sufficiently established the reliability of this new method of DNA profiling by showing that it had gained general acceptance in the relevant scientific community. (Id. at 650.) The State’s expert testimony established that the methodology had been validated by numerous peer reviewed articles in the scientific literature and was used in an increasing number of forensic laboratories throughout the United States. (Id.)
In the case at bar, Dr. Lynch has failed to show that the methodology that he actually used to form his opinion that the LIRE was negligent was a methodology generally accepted in the field of industrial hygiene or a methodology that has been peer reviewed in the industrial hygiene literature. On the contrary, Dr. Lynch’s procedure in this case deviated significantly from the methodology used by hygienists in practice, described in the scientific literature, taught to industrial hygiene students, and the methodology that Dr. Lynch himself testified was the generally accepted procedure in his profession.
In Chambers (supra), a trial court admitted expert testimony about a bullet trajectory based solely on the examination of photographs of the automobile in which the shooting allegedly took place. (Chambers, 6 AD3d at 454.) The Appellate Division found that this evidence was erroneously admitted because the accepted methodology was to instead examine the automobile itself. The plaintiff failed to show that examination of a mere photograph was a generally accepted procedure in the scientific community of forensic science.
Similarly, in the case at hand, the plaintiff failed to show that the methodology used by Dr. Lynch was generally accepted among industrial hygienists. Dr. Lynch testified that the methodology used to evaluate an employment setting for the presence of CTS risk factors, which he teaches to industrial hygiene students at Rutgers University and uses himself as a consultant, consists of a number of steps to gather as much information about a given job as possible. The first step in this procedure is known as the “recognition step” and it involves an inspection of the specific tools used in performing the job, videotaping the work site, measuring of risk factors such as worker’s posture, and assessment of any mitigating factors such as duration and frequency of rest periods.
*172 Dr. Lynch did not even perform the “recognition step” in his evaluation of the plaintiffs work site. Dr. Lynch’s testimony in this case was based solely on the information that he gained from review of plaintiffs depositions and a 10-minute interview with the plaintiff conducted shortly before Dr. Lynch had to take the stand. Thus, Dr. Lynch deviated significantly from the methodology generally accepted by industrial hygienists in evaluating a job site for the presence of CTS factors and the appropriate methodology that he testified to at this trial. In fact, he admitted that in his own practice he would not render a reliable opinion based solely on the interview of an employee. Dr. Lynch’s testimony is, therefore, highly speculative and cannot be deemed reliable under the Frye standard and he should have been precluded from testifying at the trial.
Federal courts rely upon a more liberal standard for the admissibility of expert testimony as articulated in Daubert v Merrell-Dow Pharms., Inc. (509 US 579 [1993]). In Daubert, the Supreme Court of the United States rejected the Frye standard in favor of the standard derived from the Federal Rules of Evidence because the rigidity of Frye was “at odds with the ‘liberal thrust’ of the Federal Rules and their ‘general approach of relaxing the traditional barriers to “opinion” testimony.’ ” (Id. at 588.) Nevertheless, federal courts have found expert testimony unreliable even under the Daubert standard on facts very similar to the case at hand.
For example, in Magdaleno v Burlington N. R.R. Co. (5 F Supp 2d 899 [D Colo 1998]), the employee filed an action against the employer under FELA, alleging that he suffered injuries to his wrists and hands because of the conditions present at the employer’s repair facility. (Id. at 901.) The witness for the plaintiff in Magdaleno, an ergonomics expert, was ready to testify that the defendant’s facility was unsafe due to cumulative trauma disorder risk factors such as repetition, joint deviation, force, and vibration. (Id. at 902.) The testimony in question was based on a telephone conversation with the plaintiff, review of peer literature, and analysis of statistical data regarding the occurrence of CTS among the defendant’s work force. In addition, the expert visited the railroad facility four years earlier in connection with a different litigation. During the visit, he observed employees performing tasks included in the plaintiffs job description, took photographs, made a videotape, and measured some of the tools used by the employees.
However, at trial, the expert admitted that the tools, procedures, and personal protective equipment that he inspected dur *173 ing the visit may not have represented the specific working conditions of the plaintiff. {Id. at 903.) The court held that the expert’s testimony was unreliable because his opinion was formed using “methodology [which was] not consistent with the methodologies [accepted in the field of industrial hygiene].” {Id. at 905.)
Similarly, in the case at bar, Dr. Lynch’s methodology deviated from accepted procedure. He had even less information about the LIRE facilities than the expert in Magdaleno since he never visited the LIRR’s facilities or observed LIRR employees with similar job descriptions as Mr. Hassett. Although Dr. Lynch testified that the risk factors generally associated with the general type of work that Mr. Hassett performed are well established in the literature, his testimony about the specific working conditions of Mr. Hassett were based solely on a short interview with the plaintiff and a review of the plaintiff’s deposition. Dr. Lynch’s testimony thus would not be admissible even under the Daubert standard.
CPLR 4404 (a) sets out the controlling rule in this case. It reads as follows:
“(a) Motion after trial where jury required. After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence, in the interest of justice or where the jury cannot agree after being kept together for as long as is deemed reasonable by the court.”
Under CPLR 4404 (a), a court “may set aside a verdict . . . and direct that judgment be entered in favor of a party entitled to judgment as a matter of law.” {See, CPLR 4404 [a].) However, in order for a court to set aside a verdict, it must be satisfied that there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Raugalas v Chase Manhattan Corp., 305 AD2d 654, 655 [2d Dept 2003].)
In Raugalas, the Appellate Division affirmed the trial court’s grant of defendant’s motion to set aside a jury verdict pursuant *174 to CPLR 4404. The court ruled that the plaintiff failed to establish a prima facie case that she had sustained a serious injury since the testimony of plaintiffs treating chiropractor was insufficient because it was based on examination conducted five years before the trial and because plaintiffs chiropractor failed to show that he relied upon objective, rather than subjective, medical tests.
Likewise, in the case at bar, the testimony of Dr. Lynch was not admissible under the Frye standard and should be stricken from the record. The court reserved decision on defendant’s motion in limine to preclude Dr. Lynch’s testimony as improper expert opinion and this time the motion is granted. The court also reserved decision on defendant’s motion for a directed verdict.
Without Dr. Lynch’s testimony, the plaintiff failed to make a prima facie case that the Long Island Railroad was negligent in failing to provide him with a safe working environment. In the absence of this expert opinion, there is no valid line of reasoning and permissible increases which could possibly lead the jury to a finding of negligence. The verdict should therefore be set aside and judgment should be entered in favor of the defendant.
Finally, pursuant to CPLR 4404 (a), the court may order a new trial in the interest of justice. However, a new trial in the interest of justice is warranted only if there is evidence that substantial justice has not been done (Gomez v Park Donuts, 249 AD2d 266, 267 [2d Dept 1998]). This may occur when “the trial court erred in ruling on admissibility of the evidence, there is newly-discovered evidence, or there has been misconduct on the part of attorneys or jurors.” (Id.) In the present case, none of these factors existed.
The court’s decision to strike out Dr. Lynch’s testimony does not prejudice the plaintiff. Since the plaintiff knew that the court reserved decision on the admissibility of expert testimony on the issue of LIRR’s negligence and might potentially strike this testimony, the plaintiff could have supplemented his expert testimony with other proof of the defendant’s negligence. He failed to do so.
Accordingly, upon reading and filing defendant LIRR’s motion for judgment notwithstanding the verdict, plaintiff Hassett’s memorandum of law in opposition to defendant’s motion, and LIRR’s memorandum of law in further support of LIRR’s mo *175 tion for judgment notwithstanding the verdict, defendant’s motions are granted.