17-2645-pr
Bryant v. Thomas

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY  ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 4th day of June, two thousand eighteen.

Present:       ROSEMARY S. POOLER,
               RICHARD C. WESLEY,
               DENNY CHIN,
                         *Circuit Judges*.

_____

DAVID BRYANT,

                         *Petitioner-Appellee*,

               v.                                               17-2645-pr

JUSTIN THOMAS, Superintendent of Marcy Correctional Facility,

                         *Respondent-Appellant*.[1]

_____

Appearing for Appellant:      Noah J. Chamoy, Assistant District Attorney (Nancy D. Killian, Peter D. Coddington, Assistant District Attorneys, *on the brief*), *for* Darcel D. Clark, Bronx County District Attorney, Bronx, N.Y.

Appearing for Appellee:       Paul Casteleiro, Legal Director, Centurion (W. James Cousins, *on the brief*), Princeton, N.J.

---

[1] The clerk is respectfully directed to amend the caption as above.

Appeal from the United States District Court for the Southern District of New York (Sweet, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

Respondent-Appellant Justin Thomas appeals from the August 3, 2017 order of the United States District Court for the Southern District of New York (Sweet, *J.*), granting Petitioner-Appellee David Bryant's habeas petition. The district court held that Bryant had raised a sufficient claim of actual innocence to toll the deadlines established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that Bryant had received ineffective assistance of counsel. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review a district court's decision to grant a writ of habeas corpus under § 2254 de novo." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014).

We affirm for substantially the reasons given by the district court in its thorough and well-reasoned analysis. First, Bryant sought to toll certain AEDPA filing deadlines by asserting actual innocence. Federal law as of yet does not recognize freestanding actual innocence claims. As a result, "[t]he petitioner raising such a claim does not seek to have his conviction vacated on grounds of innocence; rather, he seeks to create sufficient doubt about his guilt that the habeas court will permit him to pursue his accompanying constitutional claims notwithstanding an otherwise applicable procedural bar." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To make a sufficient showing of actual innocence, a petitioner must present a "credible and compelling" claim:

> For the claim to be "credible," it must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. For the claim to be "compelling," the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*Rivas*, 687 F.3d at 541 (internal citations and quotation marks omitted); *see also Rivas v. Fischer*, 780 F.3d 529, 545, 50-51 (2d Cir. 2015) (reaffirming credible and compelling standard). This federal actual innocence inquiry differs from New York state law, which allows freestanding actual innocence claims. *See People v. Hamilton*, 979 N.Y.S.2d 97, 99-100 (2d Dept. 2014).

We agree with the district court that Bryant made a sufficient showing of actual innocence to be excused from AEDPA filing obligations. Bryant presented (i) serological evidence indicating that his blood type does not match the semen found at the scene of the crime, along with expert testimony excluding Bryant as the source of the semen, (ii) an affidavit from the only trial eye witness to connect Bryant to the victim on the day of the murder, averring that at the time of the trial, when the witness was ten years old, he gave false testimony after being pressured by the police, and that, in truth, Bryant was not in the area when the witness last saw

2

the victim, and (iii) an affidavit from a social psychologist discussing various factors—his low IQ, his young developmental age, and the length of interrogation—which may have contributed to a false confession by Bryant the day after the murder. Under *Rivas*, this new evidence must be weighed against the remainder of the record—namely, Bryant's confession, the state's expert testimony that Bryant cannot be conclusively excluded by the serological evidence, witness testimony regarding potentially incriminating statements made by Bryant in the hours after the crime, Bryant's historical presence at the scene of the crime with young girls, several prior charges for sexual offenses, and Bryant's delay in bringing his habeas petition. Though we acknowledge that this is a difficult case, there is now a very strong possibility—though not a certainty—that Bryant's blood type excludes him as the perpetrator of the crime, and the only eye witness to connect Bryant to the victim on the day of the murder has disavowed his trial testimony. Accordingly, "we conclude that it is more likely than not that a reasonable juror, considering all the evidence, old and new, would vote to acquit [Bryant] of the murder." *Rivas*, 687 F.3d at 545.

Respondent primarily contends that this conclusion fails to accord sufficient deference to the New York state courts' rejection of Bryant's freestanding claim of actual innocence under New York law. Specifically, respondent argues that certain statements by the Bronx County Supreme Court must be treated as factual determinations under 28 U.S.C. § 2254(e)(1). However, we agree with the district court that the statements highlighted by respondent are legal determinations, and thus do not fall within Section 2254(e)(1). Further, the district court was correct to observe that those legal determinations were made in a distinct context. The Bronx County Court reasoned that Bryant's expert's conclusions were not "proved with scientific certainty," and, "[t]herefore, [Bryant] has not met his burden by clear and convincing evidence." Joint App'x at 1124-25. As we made clear in *Rivas*, the federal actual innocence inquiry serves to excuse procedural barriers, looks to the entire record, rather than each new piece of evidence individually, and "does not require absolute certainty about the petitioner's guilt or innocence." *Rivas*, 687 F.3d at 542. We also note that certain of the legal determinations reflect error. For example, the Bronx County Supreme Court found Bryant's expert testimony insufficient under New York law in part because it viewed that testimony as resting on the assumption that the victim was not a secretor.[2] But that is incorrect: both Bryant's expert and the state's expert agreed that the victim's status as a secretor was ultimately beside the point, because the dispositive question was instead whether there was sufficient male material to test. Joint App'x at 631-32, 661, 663. Accordingly, we disagree with respondent's contention that the district court failed to properly accord Section 2254(e)(1) deference to the Bronx County Supreme Court's decision.

Having concluded that Bryant's claim of actual innocence is sufficient to toll AEDPA's filing deadlines, we proceed to Bryant's constitutional claim of ineffective assistance of counsel. Bryant argued, and the district court agreed, that his trial counsel rendered constitutionally deficient assistance by failing to have Bryant blood tested, to consult a serology expert, or to otherwise comprehend the significance of the serology evidence. Respondent contends that the district court's decision again failed to grant sufficient deference to the state court's determination that Bryant's trial counsel was effective.

---

[2] A secretor is a person whose blood type can be detected from body fluids other than blood, such as semen or saliva. Approximately 80 percent of the population are secretors.

3

Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), a prisoner must demonstrate both that counsel's performance was deficient and that prejudice resulted from the deficient performance, *id.* at 687.

The Appellate Division, First Department of New York concluded that Bryant received effective assistance. *People v. Bryant*, 988 N.Y.S.2d 175 (1st Dep't 2014). Accordingly, under AEDPA, Bryant must show that the First Department's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). "[I]t is not enough for [the prisoner] to show a constitutional violation. He must also show that the state court's application of *Strickland* was not merely incorrect, but objectively unreasonable." *Palacios v. Burge*, 589 F.3d 556, 561-62 (2d Cir. 2009) (internal quotation marks omitted).

We agree with the district court that Bryant received constitutionally ineffective assistance of counsel, and that the state court's decision to the contrary was unreasonable. Requirements for constitutionally effective counsel will vary depending on the nature of the case. *See Hinton v. Alabama*, 571 U.S. 263, 134 S. Ct. 1081, 1088 (2014). Here, Bryant confessed to the crime before later asserting his innocence. If Bryant's blood type did not match the physical evidence at the crime scene—as was later shown to be the case—it would have "undermine[d] … the entire prosecution case as to all charges," *Gersten v. Senkowski*, 426 F.3d 588, 608 (2d Cir. 2005), by providing a powerful and simple means of persuading the jury that Bryant in fact was not responsible for the crime, despite his earlier statements. Further, as the district court recognized, if Bryant's blood type had matched the physical evidence, New York law developed five years prior to trial would have required the exclusion of such match results. *See People v. Robinson*, 27 N.Y.2d 864, 865 (Ct. App. 1970) (holding that evidence of match between defendant's blood type and physical evidence must be excluded "in view of the large proportion of the general population having blood of this type"). Contrary to respondent's contentions, this principle of exclusion in New York law remained in full force until well after Bryant's trial. *See People v. Mountain*, 66 N.Y.2d 197, 201-03 (Ct. App. 1985). Accordingly, blood testing Bryant presented a no-risk strategy, that might well have yielded decisively exculpatory evidence. Bryant's trial counsel not only failed to pursue a blood test, but also failed to consult an expert or otherwise understand the nature of the serological evidence. At trial, Bryant's counsel asked only two questions relating to blood type, one of which was whether a blood type H existed. And he later testified plainly that serological evidence was not on his radar at the time of the trial, and that his failure to blood type Bryant was not a strategic choice. Such failures clearly constituted ineffective assistance of counsel under Supreme Court case law. *See Hinton*, 134 S. Ct. at 1089 ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."); *see also Gersten*, 426 F.3d at 610-11 ("There was nothing strategic about a decision to concede the physical evidence, with no educated basis for doing so

4

…"). These failures greatly prejudiced Bryant, by depriving him of the opportunity to present potent evidence to the jury. *See Rivas*, 780 F.3d at 550-51 (explaining that actual innocence gateway standard is higher than *Strickland* prejudice, and finding prejudice where actual innocence claim was sufficient). The First Department's conclusion to the contrary was devoid of analysis, and was an unreasonable application of *Strickland*.

We have considered the remainder of respondent's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5